# OPINIONS OF THE JUSTICES.

## OPINION OF THE JUSTICES TO THE SENATE.

*Historic Districts. Nantucket. Constitutional Law*, Police power, Historic
districts, Delegation of powers, Due process of law, Opinions of the
Justices. *Eminent Domain*, What constitutes a taking. *Municipal
Corporations*, Historic districts. *Words*, "Public welfare."

Legislation authorizing certain control of the erection, reconstruction,
alteration, restoration and razing of buildings, and of signs, in "old
and historic" districts in Nantucket by a historic districts commission
in the interest of the public welfare under the police power would not
constitute a taking of property by eminent domain.  [777]
A statute designed for "preservation and protection of historic buildings,
places and districts" in Nantucket, "development of an appropriate
setting for" them, and benefit to the town's economy, and establish-
ing "old and historic" districts in the town and a historic districts
commission, with provisions requiring the approval of the commission
as to the appropriateness of the "exterior architectural features,"
visible by the public from a public place, of buildings and structures
thereafter to be erected, reconstructed, altered or restored in such
districts in order to prevent developments "obviously incongruous"
to their historic character, and requiring the approval of the commis-
sion for the razing of buildings and structures in the districts and for
the display of certain signs therein, and provisions for appeal to the
courts in equity as a final exclusive remedy and for penalties, would,
apart from the possibility of particular unconstitutional applications
thereof, serve the public welfare, be sufficiently definite and furnish
sufficient standards, constitute a proper delegation of legislative power,
and be constitutional as a proper exercise of the police power.  [780–
782]
The Justices were not required by the Constitution of Massachusetts to
answer questions propounded by a branch of the Legislature as to
whether a "proposed act," if enacted, would violate "any provision"
of that Constitution or would violate the Fourteenth Amendment to
the Federal Constitution.  [782]

On July 7, 1955, the Justices submitted the following
answers to questions propounded to them by the Senate:

To the Honorable the Senate of the Commonwealth of
Massachusetts:

The Justices of the Supreme Judicial Court respectfully
submit these answers to questions set forth in an order of

the Senate dated June 14, 1955, and transmitted to us on June 21.

The questions relate to a proposed act known as House No. 775, now pending before the Senate, entitled "An Act establishing an historic districts commission for the town of Nantucket and defining its powers and duties, and establishing historic districts in the town of Nantucket."

The purpose of the act is stated to be to promote the general welfare of the inhabitants of the town "through the preservation and protection of historic buildings, places and districts of historic interest; through the development of an appropriate setting for these buildings, places and districts; and through the benefits resulting to the economy of Nantucket in developing and maintaining its vacation-travel industry through the promotion of these historic associations." § 1.

The act establishes a historic districts commission of five members, who shall be resident taxpayers of the town, to be appointed by the selectmen. § 2. It establishes by definite boundaries two districts in the town to be known as (1) Old and Historic Nantucket District, and (2) Old and Historic Siasconset District. § 3. It contains provisions applicable in those districts that "No building or structure shall hereafter be erected, reconstructed, altered or restored" until an application for a building permit "shall have been approved as to exterior architectural features which are subject to public view from a public street, way or place," and evidence of such approval shall be "a certificate of appropriateness" issued by the commission (§ 4); that no building or structure shall be raised (razed?) without a permit approved by the commission, which may be refused for any building or structure "the removal of which in the opinion of said commission would be detrimental to the public interest" of the town or of the village of Siasconset (§ 5); that occupational or other signs exceeding two feet in length and six inches in width, or the erection or display of more than one such sign, irrespective of size, on any lot, building or structure must be approved

and certified by the commission (§ 6); and that the commission may hold public or private hearings as it may deem advisable (§ 7). It shall be the function and duty of the commission "to pass upon the appropriateness of exterior architectural features of buildings and structures hereafter to be erected, reconstructed, altered or restored . . . wherever such exterior features are subject to public view from a public street or way" and also to pass upon the removal of buildings and the erection or display of signs according to §§ 5 and 6 (§ 8 [a]). It is provided that the commission "in passing upon appropriateness of exterior architectural features in any case, shall keep in mind the purposes set forth" in § 1, and "shall consider among other things the general design, arrangement, texture, material and color of the building or structure in question, and the relation of such factors to similar features of buildings and structures in the immediate surroundings" (§ 8 [b]). It is expressly provided that the commission shall not consider detailed designs, relative size of buildings, interior arrangement or building features not subject to public view, and shall make no recommendations or requirements except for the purpose of preventing developments obviously incongruous to the historic aspects of the surroundings and the Old and Historic Districts (§ 8 [c]). Upon approval of plans the commission shall cause a certificate of appropriateness to be issued (§ 8 [e]). There are provisions for a penalty for violations of the act and for appeal to the selectmen and ultimately to the Superior Court. §§ 9–11. Appeal to the Superior Court with "rights of appeal and exception as in other equity cases" is to be the final exclusive remedy. § 11. The provision for appeal to the court is in terms similar to those employed in statutes providing for appeal to the court from decisions of zoning boards of appeals, which in *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, were held to carry up questions of law. The act is to take effect upon acceptance by the voters of the town. § 14.

The act contains no provision for compensation as for

property taken. The commission is to be "unpaid." § 2. But under § 7 it "may incur expenses necessary to the carrying on of its work within the amount of its annual appropriation."

The act contains some further provisions not here mentioned which it is thought unnecessary to state, as they have only a remote bearing, if any, upon the questions asked.

The questions are these:

"1. May the General Court enact legislation providing that no building shall be erected, reconstructed, altered or restored in said historic districts except as provided in section four of said proposed act?

"2. May the General Court enact legislation providing that no building or structure within the districts shall be razed except as provided in section five of said proposed act?

"3. Would the provisions of section six of said proposed act if enacted into law be constitutional?

"4. May the General Court provide that the remedies set forth in section eleven of said proposed act shall be exclusive?

"5. Would the enactment into law of the proposed act make illegal the change of use of any structure in either of the districts from a non-religious use to a use for religious purposes?

"6. May the General Court delegate the powers granted to the Old and Historic Nantucket District or the Old and Historic Siasconset District without setting up any standards aside from the general purposes as set forth in section one of said proposed act?

"7 Would the grant to the Old and Historic Districts of the powers set forth in clauses (a) and (b) of section eight of said proposed act be constitutional?

"8. Does the proposed act contain schemes for municipal improvement which violate the rights of private property secured by the state and federal constitutions against public interference through the police power?

"9. Would the proposed act, or any provision thereof if enacted into law violate any right of private property secured by the state and federal constitutions against interference through the exercise of the police power?

"10. In any controversy regarding any property in the districts arising out of the administration of said proposed act if enacted into law, would any party thereto be entitled to the right of a trial by jury?

"11. Would the enactment into law of the proposed act be a taking of ancient landmarks and other property of historical or antiquarian interests, or an interest therein, for which just compensation must be paid, as provided in Article 51 of the Amendments to the Constitution of the Commonwealth?

"12. Would the proposed act or any provision thereof be a taking of property, or any interest therein, for which the owner thereof would be entitled to recover damages?

"13. Would the proposed act if enacted into law violate any provision of the constitution of the commonwealth?

"14. Would the proposed act if enacted into law violate the Fourteenth Amendment to the Constitution of the United States?"

If the proposed act is to be construed as a taking of the property of owners affected by it, manifestly it is unconstitutional, since no provision is made for compensation as required by art. 10 of the Declaration of Rights. On the other hand, there may be many regulations and restrictions upon the use of private property under the so called police power which do not amount to a taking of the property and which rest upon the general power to legislate for the public safety, health, morals, and welfare. We are of opinion that the proposed act is not a taking. There is no provision for a formal taking, and title will remain in the owner as will also the possession and usufruct for nearly all purposes, even though restricted in ways that conceivably may in occasional instances bear down heavily. See *American Unitarian Association* v. *Commonwealth,* 193 Mass. 470, 476–477.

The question then arises whether the proposed act can be supported without a taking and the paying of compensation as a police regulation in the interest of public safety, health, morals, or welfare. There are many regulations belonging in these categories too numerous and too familiar to require specific reference here. Those which in many respects most nearly resemble the proposed act are the zoning laws the constitutionality of which is in general thoroughly established. *Opinion of the Justices*, 234 Mass. 597. *Inspector of Buildings of Lowell* v. *Stoklosa*, 250 Mass. 52. This result was aided as to the Constitution of this Commonwealth by art. 60 of the Amendments, but was reached without that aid as to the Federal Constitution. *Euclid* v. *Ambler Realty Co.* 272 U. S. 365. Many zoning regulations are as severe in their operation upon landowners as any of the provisions of the proposed act would be likely to be.

But the zoning regulations are in general directly related to the public safety and health, and less directly to the public morals. The proposed act can hardly be said in any ordinary sense to relate to the public safety, health, or morals. Can it rest upon the less definite and more inclusive ground that it serves the public welfare? The term public welfare has never been and cannot be precisely defined. Sometimes it has been said to include public convenience, comfort, peace and order, prosperity, and similar concepts, but not to include "mere expediency." *Opinion of the Justices*, 234 Mass. 597, 603. And it has been held or stated that aesthetic considerations alone are not enough, but that they may be taken into account, if the primary objects of the regulation are sufficient to justify it. *Commonwealth* v. *Boston Advertising Co.* 188 Mass. 348. *Welch* v. *Swasey*, 193 Mass. 364, affirmed 214 U. S. 91. *Ayer* v. *Commissioners on Height of Buildings in Boston*, 242 Mass. 30, 34–35. *General Outdoor Advertising Co. Inc.* v. *Department of Public Works*, 289 Mass. 149, 184–185, appeals dismissed 296 U. S. 543, 297 U. S. 725. *122 Main Street Corp.* v. *Brockton*, 323 Mass. 646 (a case of a peculiarly burden-

some zoning regulation having no reasonable relation to the
statutory purposes of zoning). *Barney & Carey Co.* v.
*Milton*, 324 Mass. 440, 448–449. It may be noted that
those decisions and statements rested upon precedents that
originated before the extensive restrictions upon the use of
private property now familiar in zoning rules had met with
general acceptance. There is reason to think that more
weight might now be given to aesthetic considerations than
was given to them a half century ago. In *Berman* v. *Parker*,
348 U. S. 26, at page 33, the court said, "The concept of
the public welfare is broad and inclusive. . . . The values
it represents are spiritual as well as physical, aesthetic as
well as monetary. It is within the power of the legislature
to determine that the community should be beautiful as
well as healthy, spacious as well as clean, well-balanced as
well as carefully patrolled." See Rodda, "The Accomplish-
ment of Aesthetic Purposes under the Police Power," 27 So.
Cal. L. Rev. 149; Dukeminier, "Zoning for Aesthetic Ob-
jectives: A Reappraisal," 20 Law and Contemporary Prob-
lems (Duke University) 218. At any rate it was held as
long as twenty years ago in *General Outdoor Advertising Co.
Inc.* v. *Department of Public Works*, 289 Mass. 149, 187–189,
that even under the Federal Constitution, where no aid
could be had from art. 50 of the Amendments to the Con-
stitution of this Commonwealth, the police power extended
to the prohibition of billboards in places "where they deface
natural scenery and places of historic interest." See *Lex-
ington* v. *Govenar*, 295 Mass. 31, 36; *Burlington* v. *Dunn*,
318 Mass. 216, 221.

The definition of the purpose of the proposed act as set
forth in § 1 is along these same lines and includes "the
preservation and protection of historic buildings, places and
districts of historic interest; through the development of
an appropriate setting for these buildings, places and dis-
tricts; and through the benefits resulting to the economy of
Nantucket in developing and maintaining its vacation-
travel industry through the promotion of these historic
associations." In the case of *New Bedford* v. *New Bedford*,

*Woods Hole, Martha's Vineyard & Nantucket Steamship Authority*, 330 Mass. 422, this court took judicial notice of the general characteristics of the island of Nantucket and of its great interest in the entertainment of summer visitors. We may also take judicial notice that Nantucket is one of the very old towns of the Commonwealth; that for perhaps a century it was a famous seat of the whaling industry and accumulated wealth and culture which made itself manifest in some fine examples of early American architecture; and that the sedate and quaint appearance of the old island town has to a large extent still remained unspoiled and in all probability constitutes a substantial part of the appeal which has enabled it to build up its summer vacation business to take the place of its former means of livelihood. In a general way much the same can be said of the village of Siasconset, which is a part of the town of Nantucket. There has been substantial recognition by the courts of the public interest in the preservation of historic buildings, places, and districts. *Opinion of the Justices*, 297 Mass. 567. *General Outdoor Advertising Co. Inc.* v. *Department of Public Works*, 289 Mass. 149, 187–189, 197–198, 200–201. *United States* v. *Gettysburg Electric Railway*, 160 U. S. 668. *State* v. *Kemp*, 124 Kans. 716. *Flaccomio* v. *Mayor & City Council of Baltimore*, 194 Md. 275. See art. 51 of the Amendments to the Constitution of this Commonwealth.

It is not difficult to imagine how the erection of a few wholly incongruous structures might destroy one of the principal assets of the town, and we assume that the boundaries of the districts are so drawn as to include only areas of special value to the public because of possession of those characteristics which it is the purpose of the act to preserve.

We think the requirements of the proposed act are not too indefinite or lacking in sufficient standards. The act does not require anything to be done to existing structures with the possible exception of signs (§ 6). With the same possible exception, it applies only to exterior archi-

tectural features subject to public view from a public place (§ 4). It does not apply to details of design or sizes of buildings or interior arrangement of building features not subject to public view, and requirements by the commission must be limited to the preventing of developments "obviously incongruous to the historic aspects of the surroundings" (§ 8 [c]). This last provision is apparently intended to prevent decisions based upon peculiar individual tastes. All provisions must be interpreted with reference to the main purposes of the act. See § 8 (b). In at least two very recent cases regulations based in part upon standards of architecture intended to comport with the established surroundings have been sustained. *New Orleans* v. *Levy,* 223 La. 14. *State* v. *Wieland,* 269 Wis. 262. See 64 U. S. Sts. at Large, c. 984, relating to "Old Georgetown."

We are of opinion that in a general sense the proposed act would be an act for the promotion of the public welfare and would be constitutional, and we answer the questions on that basis. There might, however, be particular instances in which decisions of the commission, because of peculiar hardship and remoteness from the legitimate purposes of the act, would be unconstitutional applications of it. This has occurred at times in the application of the zoning laws. See *Nectow* v. *Cambridge,* 277 U. S. 183; *Pittsfield* v. *Oleksak,* 313 Mass. 553; *Barney & Carey Co.* v. *Milton,* 324 Mass. 440, 444–445, 449; *Butler* v. *East Bridgewater,* 330 Mass. 33, 39–40.

With the qualification last mentioned we answer questions 1 and 4 "Yes" and questions 11 and 12 "No." We answer questions 2 and 3 "Yes," although it would seem that refusal to permit the removal of some old and decrepit structure impossible to repair within reasonable cost might in some instances be an unconstitutional application of the act, and while the regulation of signs would be quite appropriate in a residential district, the proposed limitations, if applied to a commercial enterprise on a business street, could perhaps in some instances be found unduly restrictive. We answer question 5 "No," since the act

would not apply to uses of property, but if the change involved the alteration of exterior architectural features subject to public view from a public place the act would apply. The statute referred to in *Attorney General* v. *Dover*, 327 Mass. 601, St. 1950, c. 325, § 1, amending G. L. (Ter. Ed.) c. 40, § 25, and § 2, amending c. 40, § 30B, now embodied in c. 40A (see St. 1954, c. 368, § 2), affects only ordinances and by-laws and in any event could not control a statute subsequently enacted by the General Court. We answer question 6 "Yes," but in so doing we take into consideration all of the provisions of the act and not merely those of § 1. We answer question 7 "Yes" and questions 8 and 9 "No," subject to qualifications already mentioned. As to question 10, we can make no precise answer beyond those already made, since we do not feel able to anticipate all possible kinds of controversy that might in some way arise "out of the administration of said proposed act." Questions 13 and 14 are of a type including all possible questions of constitutionality that might arise under the State Constitution or under the Fourteenth Amendment to the Constitution of the United States concerning any provision of the proposed act without directing our attention to any particular question which the Senate has in mind. The Justices have long been of opinion that they were not required by our Constitution to answer questions of this kind. *Opinion of the Justices*, 328 Mass. 679, 691, and opinions there cited. We respectfully request to be excused from answering these questions.

STANLEY E. QUA.
HENRY T. LUMMUS.
JAMES J. RONAN.
RAYMOND S. WILKINS.
JOHN V. SPALDING.
HAROLD P. WILLIAMS.
EDWARD A. COUNIHAN, JR.