OPINION OF THE JUSTICES TO THE SENATE.

*Historic Districts. Boston. Constitutional Law,* Police power, Historic
districts, Due process of law, Opinions of the Justices. *Eminent Do-*
*main,* What constitutes a taking. *Municipal Corporations,* Historic
districts.

A statute designed for the preservation of the historic Beacon Hill section
of Boston and establishing a "Historic Beacon Hill District" and a
"Beacon Hill Architectural Commission," with provisions precluding
construction, reconstruction or alteration of any "exterior architec-
tural features," if found by the commission to be involved, without its
certificate of appropriateness and precluding demolition of any such
"feature" until the commission has issued a certificate of expiration
of a required period of notice to it, and provisions for appeal to the
courts in equity by an aggrieved applicant, for penalties, and for au-
thority of the courts to restrain acts in violation of the statute and
make orders for remedying such acts, would, apart from the possi-
bility of particular unconstitutional applications thereof, afford due
process of law, serve the public welfare, and be constitutional as a
proper exercise of the police power.  [787–788]
Legislation authorizing certain control of the construction, reconstruction,
alteration and demolition of "exterior architectural features" in a
"Historic Beacon Hill District" in Boston by a "Beacon Hill Archi-
tectural Commission" in the interest of the public welfare under the
police power would not constitute a taking of property by eminent
domain.  [790]
The Justices were not required by the Constitution of Massachusetts to
answer questions propounded by a branch of the Legislature as to
whether a "proposed act," if enacted, would violate "any provision"
of that Constitution, or would violate the Fourteenth Amendment to
the Federal Constitution, or would "contain schemes" violating "the
rights of private property secured by the State and Federal Constitu-
tions against interference through the police power."  [790–791]

On July 7, 1955, the Justices submitted the following
answers to questions propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of
Massachusetts:

The Justices of the Supreme Judicial Court respectfully
submit these answers to the questions contained in an

order of the Senate dated June 28, 1955, and submitted to us on June 30.

The questions relate to a proposed act known as Senate No. 650 and entitled "An Act creating the Historic Beacon Hill District in the city of Boston and establishing in the building department of said city the Beacon Hill architectural commission and defining its powers and duties." A copy of the act is attached hereto.

The essential features of the proposed act sufficient, we think, to an understanding of the questions and answers are these:

The Historic Beacon Hill District is created with defined boundaries, all in the section of Boston generally known as Beacon Hill. § 1. The purpose of the act is stated to be "to promote the educational, cultural, economic and general welfare of the public through the preservation of the historic Beacon Hill district, and to maintain said district as a landmark in the history of architecture and as a tangible reminder of old Boston as it existed in the early days of the commonwealth." § 2. A "Beacon Hill Architectural Commission" is created. Its members must serve without compensation for their services and must keep records of their determinations and votes. § 4. No permit shall be issued by the building commissioner for the construction, reconstruction, alteration, or demolition of any structure in the district, with certain exceptions not considered material to the questions asked, unless the application bears (1) a certificate of the commission that no exterior architectural feature is involved, or (2) a certificate of appropriateness issued under § 7, or (3) in the case of the demolition of a structure a certificate under § 8 that twenty days, or such lesser period as the commission may have determined, has expired after receipt by the commission of notice of demolition. § 5. By § 3 "exterior architectural feature" is defined as "the architectural style and general arrangement of such portion of the exterior of a structure as is designed to be open to view from a public way, including kind, color and texture of the building material of such

portion and type of all windows, doors, lights, signs, and
other fixtures appurtenant to such portion." Under § 6
persons about to apply to the building commissioner for a
permit to construct, reconstruct, alter, or demolish any
structure are required to supply to the commission all plans
and specifications, and the commission is to determine
whether any exterior architectural feature is involved. If
it determines that none is involved, it shall cause its secre-
tary to indorse a certificate to that effect on the application
for a permit and to return it to the applicant. Section 7
provides that no person shall construct, reconstruct, alter,
or demolish any exterior architectural feature until he shall
have filed with the secretary of the commission an ap-
plication for a certificate of appropriateness, and such
certificate shall have been issued. The commission is
required to give notice and a hearing (unless waived)
to all persons whom it finds to be materially affected and
to others who have requested notice. The commission is to
determine whether the proposed construction, reconstruc-
tion, or alteration of the exterior architectural features in-
volved "will be appropriate to the preservation of the
historic Beacon Hill district for the purposes of this act,
and whether, notwithstanding that it may be inappropriate,
owing to conditions especially affecting the structure in-
volved, but not affecting the historic Beacon Hill district
generally, failure to issue a certificate of appropriateness will
involve a substantial hardship to the applicant and such a
certificate may be issued without substantial detriment to
the public welfare and without substantial derogation from
the intent and purposes of this act. In passing upon ap-
propriateness, the commission shall consider, in addition
to any other pertinent factors, the historical and architec-
tural value and significance, architectural style, general
design, arrangement, texture, material and color of the
exterior architectural feature involved and the relationship
thereof to the exterior architectural features of other struc-
tures in the immediate neighborhood." If the commission

determines that the proposed construction, reconstruction, or alteration will be appropriate or that, even if inappropriate, owing to conditions aforesaid failure to issue a certificate will involve substantial hardship to the applicant and issuance may be made without substantial detriment as aforesaid, the secretary is to issue a certificate of appropriateness. The section contains no express provision giving the commission power to issue certificates of appropriateness in instances of demolition, although the first sentence seems to require that the landowner procure a certificate in such instances. Section 8, however, provides that no person shall demolish any exterior architectural feature until after notice to the commission and that the commission shall issue a certificate that the required period of notice has expired, and as previously stated § 5 seems to authorize the building commissioner to issue a permit for demolition without any certificate of appropriateness if a certificate has been issued under § 8.

The proposed act contains a provision for appeal by an aggrieved applicant to the Superior Court, which is to hear all pertinent evidence and to annul the determination of the commission if it finds the reasons given by it to be unwarranted by the evidence or insufficient in law to warrant the determination of the commission "or make such other decree as justice and equity may require," subject to appeal and exception as in other equity cases. § 10. There are also penalties for violation of the act and a provision for restraining the construction, reconstruction, alteration, or demolition of any exterior architectural feature in violation of the act and for orders for the removal of such features constructed or reconstructed in violation of the act and for the restoration of such features altered in violation thereof.

In addition to the facts appearing from the proposed act itself there are other facts of common knowledge in relation to Beacon Hill. The area was closely built up for the homes of persons of taste and culture in the architectural style of urban residences prevailing a century or more ago. There is general uniformity in design and structure. Al-

though the area is not far from the business center of Boston, commercial development has proceeded in other directions, and the Beacon Hill section, with some exceptions, has remained to this day rather surprisingly free from inharmonious intrusions. Its general appearance is substantially what it was several generations ago. The Bulfinch front, so called, of the State House, completed before the year 1800, is at the highest point of the hill. The famous Boston Common is located on the side of Beacon Street opposite the southerly boundary of the proposed district. The area has contained the homes of many persons of distinction in the life of the State and Nation. That it is a locality of historic significance can hardly be doubted.

The announced purpose of the act is to preserve this historic section for the educational, cultural, and economic advantage of the public. If the General Court believes that this object would be attained by the restrictions which the act would place upon the introduction into the district of inappropriate forms of construction that would destroy its unique value and associations, a court can hardly take the view that such legislative determination is so arbitrary or unreasonable that it cannot be comprehended within the public welfare.

In our answers to recent questions of the Senate pertaining to proposed historic districts in Nantucket we have discussed at some length the constitutional aspects of restrictions upon the character of building in areas set apart as such districts, whether or not there is involved any element of aesthetic considerations, and we cited authorities revealed by our research into the subject.[1] We beg to refer to what we there said without repeating it here. In that instance the districts of historic interest intended to be preserved were in ancient villages that had survived into our day. In this instance it is an ancient section of the capital city of the Commonwealth. But the principles are the same. There are some other differences between the two proposed acts, but we think none is sufficient to render what we said in our

---

[1] *Opinion of the Justices, ante,* 773.

discussion in the former instance inapplicable in this later instance.

We answer the questions now presented on the assumption that the area within the boundaries of the district includes only territory to which the General Court can reasonably find the purposes of the statute are applicable, and we answer with the further qualification that, as in the case of zoning regulations, although the statute may in general be constitutional, it is possible that particular applications of it, because of peculiar hardship and remoteness from the legitimate purposes of the statute, might be unconstitutional. See, for example, *Nectow* v. *Cambridge*, 277 U. S. 183, and our own decisions cited in the former opinion.

For convenience, we place the questions and answers in pairs.

Question 1: "Would the provisions of section six of said proposed act requiring that except in cases excluded by section nine, every person about to apply for a permit to construct any structure in the district or to reconstruct, alter or demolish any structure shall deposit with the secretary of the commission his application with all plans and specifications, be constitutional?"

Answer: "Yes."

Question 2: "Would the provisions of section seven of said proposed act providing that no person shall reconstruct, alter or demolish any exterior architectural feature in the district without a certificate of appropriateness when the section gives the commission power to determine only as to whether the proposed construction, reconstruction or alteration will be appropriate, with no power as to demolition, be constitutional?"

Answer: "Yes." We think that any difficulty that may arise because of the absence in § 7 of any express provision giving the commission power of determination in cases of demolition raises only a question of construction which would have to be decided with all the provisions of the act in mind. We do not think that such absence raises a constitutional question.

Question 3 (a): "Would the provisions of section seven of the proposed act if enacted into law be arbitrary, capricious and discriminatory and repugnant and contrary to chapter 1, section 1, article 4 of the constitution of the commonwealth?"

Answer: "No."

Question 3 (b): "Would the provisions of said section seven be violative of article 1 of the Declaration of Rights of the constitution of the commonwealth?"

Answer: "No."

Question 3 (c): "Would the provisions of said section seven be violative of Article X of the Declaration of Rights?"

Answer: "No."

Question 3 (d): "Would the provisions of said section seven be violative of Article XIV of the Amendments to the constitution of the United States?"

Answer: "No."

Question 4: "Would the requirement of section eight of the proposed act requiring the filing of a written notice of the intent to demolish any exterior architectural feature with a delay of twenty days when the only power of the commission in relation to such demolition is to issue a certificate of the expiration of such period, be constitutional?"

Answer: "Yes." See answer to question 2.

Moreover, there may be reasons making the requirement of notice proper and reasonable, even if the only power of the commission is to issue a certificate of the expiration of the period.

Question 5: "Would said proposed act if enacted into law be a lawful use of the police power?"

Answer: "Yes," with the qualification mentioned above as to an occasional possible special application.

Question 6: "May the General Court impose the limitations on the use of property already zoned under the Boston Zoning Act without providing compensation for the owners of such property?"

Answer: "Yes."

Question 7: "May the General Court provide, as set

forth in section eleven, that the superior court may order the removal of any structure erected in violation of said act and the substantial restoration of any structure altered or repaired in violation thereof, without providing compensation to the owner of any such structure?"

Answer: "Yes."

Question 8: "Would the provisions of section eleven of said proposed act be violative of Article 26 of the Declaration of Rights?"

Answer: "No."

Question 9: "Would the proposed act if enacted into law be constitutional if interpreted to prohibit the construction, reconstruction or alteration of a structure within the district to be used for religious purposes if such construction, reconstruction or alteration did not have a certificate of appropriateness?"

Answer: "Yes."

Question 10: "In any controversy regarding any property in the district arising out of the administration of said proposed act if enacted into law, would any party thereto be entitled to the right of a trial by jury?"

Answer: We can make no precise answer beyond those already made, since we do not feel able to anticipate all possible kinds of controversy that might in some way arise "out of the administration of said proposed act."

Question 11: "Would the enactment into law of the proposed act be a taking of ancient landmarks and other property of historical or antiquarian interest, or an interest therein, for which just compensation must be paid, as provided in Article 51 of the Amendments to the Constitution of the commonwealth?"

Answer: "No."

Question 12: "Would the proposed act or any provision thereof be a taking of property, or any interest therein, for which the owner thereof would be entitled to recover damages?"

Answer: "No."

Questions 13, 14, and 15 are as follows: "13. Would the proposed act if enacted into law violate any provision of

the Constitution of the Commonwealth? 14. Would the proposed act if enacted into law violate the Fourteenth Amendment to the Constitution of the United States? 15. Would the proposed act if enacted into law contain schemes for municipal improvement which violate the rights of private property secured by the state and federal constitutions against interference through the police power?"

Answer: Those questions are of a type including all, or nearly all, possible questions of constitutionality that might arise under the State or Federal Constitutions or the Fourteenth Amendment to the Federal Constitution concerning any provision of the proposed act without directing our attention to any particular question which the Senate has in mind. The Justices have long been of opinion that they were not required by our Constitution to answer questions of this kind. *Opinion of the Justices,* 328 Mass. 679, and opinions there cited. We refer to the answers already made to more specific questions and request to be excused from answering questions 13, 14, and 15.

STANLEY E. QUA.
HENRY T. LUMMUS.
JAMES J. RONAN.
RAYMOND S. WILKINS.
JOHN V. SPALDING.
HAROLD P. WILLIAMS.
EDWARD A. COUNIHAN, JR.