Request of House of Representatives,
No. 4931.

OPINION OF THE JUSTICES.

Submitted April 3, 1961.

Answer returned April 19, 1961.

The following resolution adopted by the House of Representatives on March 23, 1961, was filed in this court on March 28, 1961:

"WHEREAS, House Bill No. 24 as amended, entitled An Act to restrict outdoor advertising on the interstate highway system, is pending before the House of Representatives, and

"WHEREAS, questions have been raised concerning the constitutionality of said bill, therefore be it

"RESOLVED, that the Justices of the Supreme Court be respectfully requested to give their opinion on the following questions of law:

"1. Would any constitutional provisions be violated by restricting outdoor advertising as provided in House Bill No. 24 as amended?

"2. Without in any way limiting the generality of question No. 1, would the enactment of House Bill No. 24, as amended, for

the purpose of securing funds offered by the United States, as disclosed in said Bill and amendment, violate any constitutional provisions?

"AND BE IT FURTHER RESOLVED, that the Speaker of the House transmit ten copies of these Resolutions and ten copies of House Bill No. 24, with amendment as proposed, to the Clerk of the Supreme Court for consideration by said Court."

The following answer was returned:

*To the House of Representatives:*

The undersigned Justices of the Supreme Court make the following reply to your request for advice upon the following questions:

"1. Would any constitutional provisions be violated by restricting outdoor advertising as provided in House Bill No. 24 as amended?

"2. Without in any way limiting the generality of question No. 1, would the enactment of House Bill No. 24, as amended, for the purpose of securing funds offered by the United States, as disclosed in said Bill and amendment, violate any constitutional provisions?"

The criticism of the bill centers upon the proposition that it is not a valid exercise of the police power of the State. The purpose of the bill is declared in the preamble to be as follows: "It is hereby declared to be the policy of this state and in the public interest to provide for maximum visibility along the interstate system and connecting roads or highways, to prevent unreasonable distraction of operators of motor vehicles, to prevent confusion with regard to traffic lights, signs or signals or otherwise interfere with the effectiveness of traffic regulations, to promote maximum safety, comfort and well-being of users of the interstate highway system and to preserve and enhance the natural scenic beauty or the aesthetic features of the interstate highway system and adjacent areas."

While the purposes as above stated are not determinative (*Opinion of the Justices*, 99 N. H. 528, 530), they are nevertheless entitled to weight in determining the constitutionality of the proposed law. *Velishka* v. *Nashua*, 99 N. H. 161, 165. The decisive question is whether the act has some rational tendency to promote the objects it seeks to advance. *Chung Mee* v. *Healy*, 86 N. H. 483.

At the outset we must recognize that interstate highways are

built with taxpayers' money to promote the general welfare and safety of the public by affording means of swift, safe and pleasurable travel for all, and not to secure commercial advantages for a limited number of advertisers. Whatever value billboards along such highways possess is due to the presence of the public whose tax money has constructed the highways. *Kelbro, Inc.* v. *Myrick*, 113 Vt. 64, 67-68. The safety, well-being and legitimate enjoyment of the public in the use of the highways is the paramount consideration of the bill.

The police power, the function of which is to insure this, is of broad and varied application. *Noble State Bank* v. *Haskell*, 219 U. S. 104, 111; *Berman* v. *Parker*, 348 U. S. 26, 32-33. Furthermore, if it is to serve its purpose in the face of the magnitude and rapidity of the changes occurring today, it must be of a flexible and expanding nature to protect the public against new dangers and to promote the general welfare by different methods than those formerly employed. With vehicles hurtling along at the speed which characterizes travel on interstate or so-called super highways, an instant's inattention or confusion may be disasterous. We need not labor the point that anything beside the road which tends to distract or confuse the driver of a motor vehicle directly affects public safety. Signs of all sizes, shapes and colors, designed expressly to divert the attention of the driver and occupants of motor vehicles from the highway to objects away from it, may reasonably be found to increase the danger of accidents, and their regulation along highways falls clearly within the police power.

Another consideration bearing on the constitutionality of the bill rests on the fact that New Hampshire is peculiarly dependent upon its scenic beauty to attract the hosts of tourists, the income from whose presence is a vital factor in our economy. That the general welfare of the State is enhanced when tourist business is good and affected adversely when it is bad, is obvious. It may thus be found that whatever tends to promote the attractiveness of roadside scenery for visitors relates to "the benefit and welfare of this state" and may be held subject to the police power. See *Maritime Packers* v. *Carpenter*, 99 N. H. 73, 77.

It seems unnecessary to decide here whether aesthetic considerations alone furnish ground for the exercise of the police power as is increasingly stated by modern authorities (*Berman* v. *Parker*, 348 U. S. 26, 32-33), though denied under earlier decisions. *Passaic* v. *Paterson Bill Posting Co.*, 72 N. J. L. 285. In any event, in this

day and age we do not believe that such can be entirely ignored and without stating that they are decisive, we hold that the maintenance of the natural beauty of areas along interstate highways is to be taken into account in determining whether the police power is properly exercised. *Murphy* v. *Westport*, 131 Conn. 292; *State* v. *Wieland*, 269 Wis. 262.

Bearing in mind all the factors involved, in our opinion the regulation of outdoor advertising along interstate highways is a valid exercise of the police power. *Rockingham Hotel Co.* v. *North Hampton*, 101 N. H. 441, 444; *Chung Mee* v. *Healy*, 86 N. H. 483. Such regulation is therefore not an unconstitutional taking of property without compensation.

The opponents of the proposed bill also attack it upon the grounds that the classification of billboards which permits advertising devices for products originating on the premises of the owners but forbids signs for products not so originating, is arbitrary, discriminatory and without any sound basis. *Central Outdoor Advertising Co.* v. *Evandale*, 124 N. E. 2d 189 (Ohio, Court of Common Pleas). We do not think that this is so. It appears to us that a valid distinction exists between signs which advertise businesses conducted on the premises including the offering for sale of the property upon which these signs are located, and those benefiting in the main national producers whose solicitude is for their own welfare and not that of the community. *Rockingham Hotel Co.* v. *North Hampton*, 101 N. H. 441, 444-445. Other courts have reached the same conclusion. *Kelbro, Inc.* v. *Myrick*, 113 Vt. 64, 74.

The argument that the proposed law would deprive owners of property without compensation and would operate retrospectively does not require extended consideration. The opponents agree in accord with the settled rule that billboards which are nuisances may be removed without compensation to the owners. We believe that the legislative finding, which is entitled to great weight (*Opinion of the Justices*, 88 N. H. 484, 490) that billboards in proximity to the highway, such as are forbidden by the proposed law are nuisances, is sustainable as a general proposition and the objection to the bill upon this ground cannot prevail. If in a specific situation a sign which is in fact not a nuisance is forbidden by the bill its removal should be required only upon payment of compensation. See *Matter of Harbison* v. *Buffalo*, 4 N. Y. 2d 553, 564; 44 Cornell L. Q. 450; *People* v. *Miller*, 304 N. Y. 105.

Your second inquiry is whether House Bill No. 24, as amended, would be unconstitutional because one of its purposes is to secure funds offered by the Federal Government. The fact that valid legislation may be induced in part by the consideration that such funds will assist in furthering the policies of the legislation violates no provisions of our Constitution. Unquestionably the State cannot delegate its sovereign police power (*Trustees &c. Academy* v. *Exeter*, 90 N. H. 472, 487-488) but the provisions of the bill require no such delegation.

In conclusion the answer to both of your questions is no.

FRANK R. KENISON.
LAURENCE I. DUNCAN.
AMOS N. BLANDIN, JR.
EDWARD J. LAMPRON.
STEPHEN M. WHEELER.

April 19, 1961.

*Upton, Sanders & Upton* furnished a memorandum in favor of affirmative answers.

*Henry C. Newell,* Representative Ward 7, furnished a memorandum in support of negative answers.