389 P.2d 13

**CITY OF SANTA FE, Plaintiff-Appellee,**

**v.**

**GAMBLE–SKOGMO, INC. and Charles Atwell, Defendants-Appellants.**

**No. 7327.**

Supreme Court of New Mexico.

Jan. 27, 1964.

Gilbert, White & Gilbert, Sumner S. Koch, Santa Fe, for appellant.

Dean S. Zinn, John D. Donnell, Santa Fe, for appellee.

NOBLE, Justice.

This appeal requires our determination whether the historical zoning ordinance of the City of Santa Fe is ultra vires of the city's powers and whether the ordinance is valid and constitutional.

Defendants, Gamble-Skogmo, Inc. and Charles Atwell, resident manager, obtained a permit pursuant to the city building code to remodel a building within the historical zone in Santa Fe. One requirement of the plans and specifications and of the permit was that to comply with the historical zoning ordinance, the window panes not exceed thirty inches square. The window pane requirement was accomplished by installation of "mullions" or wooden dividers back of the window panes which gave the appearance of window panes of the required size. After completion of the remodeled building, but before the city's approval, the defendants removed the dividers leaving large show windows contrary to the city ordinance and the building permit.

This appeal followed the conviction and sentence in the district court, on appeal from the city court.

We find no merit to defendants' first contention that a criminal conviction cannot be supported because the historical zoning ordinance contains no penalty clause. The historical zoning act prescribes the conditions for approval of plans and specifications upon which a building permit is issued under the building code. Defendants were charged and found guilty in city court with violation of that provision of the Uniform Building Code which requires all construction work to be according to the plans and specifications approved with the building permit. No attack was made, either in the trial court or here, upon the building code.

Santa Fe Ordinance 1957–18, adopted October 30, 1957, created an historical district and provided regulations for buildings constructed or altered therein. Its purpose is stated as:

"Section 2. *Purpose of Creating 'H' Historical District.*

"That in order to promote the economic, cultural and general welfare of the people of the City of Santa Fe, and to insure the harmonious, orderly and efficient growth and development of the municipality, it is deemed essential by the City Council of the City of Santa Fe, that the qualities relating to the history of Santa Fe, and a harmonious outward appearance which preserves property values and attracts tourists and residents alike, be preserved; some of these qualities being: the continued existence and preservation of historical areas and buildings;

continued construction of buildings in the historic styles, and a general harmony as to style, form, color, proportion, texture and material between buildings of historic design and those of more modern design."

Defendants next direct their attack to the historical zoning portion of the city's zoning ordinance, claiming a lack of enabling legislation authorizing such an exercise of the police power by the city.

█ ■A municipality has no inherent right to exercise police power. Its powers are derived solely from the state. Town of Mesilla v. Mesilla Design Center & Book Store, 71 N.M. 124, 376 P.2d 183; Munro v. City of Albuquerque, 48 N.M. 306, 150 P.2d 733. We, therefore, examine the statutes in force at the time the ordinance was adopted directing our inquiry to whether the grant of zoning power authorized preservation of a historical area. It is agreed that the authority, if it is to be found, must be contained in §§ 14–28–9 to 11, N.M.S.A.1953. § 14–28–10 contains a specific grant of power to regulate or restrict the erection, construction, re-construction, alteration, repair or use of buildings, structures or lands, and § 14–28–11 provides that "such regulations and restrictions" shall be "in accordance with a comprehensive plan * * * to promote the health and the general welfare * * *." We note in passing that specific

legislative authority was subsequently granted by the "Historic District Act," Ch. 92, Laws 1961. 14 -50 - 1 ᵃⁿᵈᵉᵃʳ /ᵗⁱ⁻ ᵗⁱ )

█ Defendants assert that the enabling legislation limited a municipality's zoning power to enactment of regulations restricting the height, number of stories, and size of buildings; the size of lots and percentage thereof that may be occupied; the density of population, and the location and use of buildings for trade, industry, residence or other uses. We find no such restriction in the statute. Sec. 14–28–11, N.M.S.A.1953, grants the authority to regulate and restrict "in accordance with a comprehensive plan * * *; to promote health and the general welfare; * * *." The legislature, then, granted municipalities authority, by zoning ordinances, to restrict and regulate buildings and structures in accordance with a comprehensive plan for the general welfare of the city and its people. To be within the authorized purposes the zoning ordinance must bear some reasonable relationship to the general welfare.

The term "general welfare" has not been exactly defined, we think, by reason of the same definitive problem expressed in Arnold v. Board of Barber Examiners, 45 N. M. 57, 70, 109 P.2d 779, 787, regarding the phrase "affected with a public interest," where it was said:

"* * * The phrase 'affected with a public interest' probably can never be

given an exact definition. This is probably desirable when we reflect upon the constant and ever changing conditions of our social and economic structure. This condition clearly implies the necessity for some degree of latitude allowable for obviously necessary judicial interpretation."

See, also, Barwin v. Reidy, 62 N.M. 183, 192, 307 P.2d 175, which described the public policy as "a wide domain of shifting sands."

No decisions discussing the precise question of enabling legislation have been pointed out to us nor have we found any. However, analogous questions were before the Massachusetts Supreme Court on at least two occasions. The question there was the constitutionality of proposed legislation establishing and preserving historical areas in that state. In each case the right to exercise the police power depended upon whether preservation of such an historical area and style of architecture was comprehended within the public welfare. If it was, the police power could be constitutionally exercised to preserve and protect such areas.

In the opinion of the Justices to the Senate, 333 Mass. 783, 128 N.E.2d 563, 566, it was said:

"The announced purpose of the act is to preserve this historic section for the educational, cultural, and economic advantage of the public. If the General Court believes that this object would be attained by the restrictions which the act would place upon the introduction into the district of inappropriate forms of construction that would destroy its unique value and associations, a court can hardly take the view that such legislative determination is so arbitrary or unreasonable that it cannot be comprehended within the public welfare."

In a second opinion of the Justices to the Senate, 333 Mass. 773, 128 N.E.2d 557, 559, 561, the same question was presented regarding an act establishing historic districts known as "(1) Old and Historic Nantucket District, and (2) Old and Historic Siasconset District." The purpose of the act was to promote the general welfare of the inhabitants of the town through " 'the preservation and protection of historic buildings, places and districts of historic interest; through the development of an appropriate setting for these buildings, places and districts; and through the benefits resulting to the economy of Nantucket in developing and maintaining its vacation-travel industry through the promotion of these historic associations.' * * *." The purpose was held to be for the promotion of the public welfare. We quote at some length from the Massachusetts court because of its special application to the situation presented by the instant case. In 128 N.E.2d at 561, 562, it was said:

" * * * Can it rest upon the less definite and more inclusive ground that it serves the public welfare? The term public welfare has never been and cannot be precisely defined. * * *"

The court after discussing other decisions went on to say:

" * * * We may also take judicial notice that Nantucket is one of the very old towns of the Commonwealth; that for perhaps a century it was a famous seat of the whaling industry and accumulated wealth and culture which made itself manifest in some fine examples of early American architecture; and that the sedate and quaint appearance of the old island town has to a large extent still remained unspoiled and in all probability constitutes a substantial part of the appeal which has enabled it to build up its summer vacation business to take the place of its former means of livelihood. * * * There has been substantial recognition by the courts of the public interest in the preservation of historic buildings, places, and districts. (citing authorities)

"It is not difficult to imagine how the erection of a few wholly incongruous structures might destroy one of the principal assets of the town, * * *.

"We are of opinion that in a general sense the proposed act would be an act for the promotion of the public welfare * * *."

For other persuasive decisions, because they involved the question whether the taking, under eminent domain, for preservation of sites of historical interest was for a public purpose; in the public interest; or for the general welfare, see: United States v. Gettysburg Electric Ry., 160 U.S. 668, 681, 16 S.Ct. 427, 40 L.Ed. 576, (Site of the Gettysburg Address); Flaccomio v. Mayor & City Council of Baltimore, 194 Md. 275, 71 A.2d 12, 14, (property where the "Star Spangled Banner" which flew over Fort McHenry was made); State v. Kemp, 124 Kan. 716, 261 P. 556, 59 A.L.R. 940, (the Shawnee Mission property, an early Indian mission).

■ State courts generally have held that the police power may be exercised only to protect and promote the safety, health, morals and general welfare. 29 Fordham L.R. 729. Since the legislature can preserve such historical areas by direct legislation as a measure for the general welfare, it follows that municipal ordinances protecting such areas are authorized under enabling legislation granting power to zone for the public welfare. We, therefore, hold that the purpose of the Santa Fe historical zoning ordinance is within the term "general welfare," as used in the municipal zoning enabling legislation.

Defendants agree that there is authority supporting the validity of ordinances enacted under legislative authority having for their purpose the preservation of historical buildings, areas or districts and limiting construction or alteration to specified historical architectural design. They, therefore, limit their challenge to the window pane restriction of the ordinance, "single panes of glass larger than thirty inches square are not permissible except as otherwise provided," asserting that control of buildings by regulating the size and shape of its windows has no relation to the public welfare, but on the contrary, amounts only to an aesthetic detail which they contend will not support the exercise of the police power. We find the argument to be without merit.

The cases relied upon by defendants deal with purely aesthetic regulations having no connection with preservation of an historical area or an historical style of architecture, and are, accordingly, either distinguishable upon their facts or are not persuasive under the facts of the instant case. Defendants have lifted the single architectural design from the detailed description in the ordinance of the "Old Santa Fe Style" and say that such a minute detail of construction is only an attempt by the city to impose its idea of an aesthetic detail of architecture and is, therefore, an arbitrary and unreasonable exercise of police power. They ignore the fact that the window pane requirement is only one of very many details of the historical architectural style which it is said has evolved within the City of Santa Fe from about the year 1600 to the present, which the ordinance seeks to protect and preserve. So far as the record discloses, the window design is as much a part of the Santa Fe style as are flat roofs, projecting vigas, and wooden lintels. The announced purpose of the ordinance is to preserve the historic sections of the city and its ancient architecture for the culture and economic advantage of the people. The council has, in effect, said that to permit incongruous structures would destroy a great historic area and one of the principal assets of the city.

Since the legislative body of the city has declared that the power is being exercised for a public purpose, the role of the judiciary becomes an exceedingly narrow one. Berman v. Parker, 348 U.S. 26, 33, 75 S.Ct. 98, 99 L.Ed. 27; City of Alamogordo v. McGee, 64 N.M. 253, 327 P.2d 321.

Under the restricted attack made upon the ordinance, it seems unnecessary to decide here whether aesthetic considerations, denied under earlier decisions, furnish ground for the exercise of the police power as is increasingly held by modern authorities. Berman v. Parker, supra; Opinion of the Justices, 103 N.H. 268, 169 A.2d 762; and see discussion 35 Boston U.L.R. 615; 32 U. of Cincinnati L.R. 367;

2 Wayne L.R. 63. In any event, without deciding the question, such considerations cannot be entirely ignored. People v. Stover, 12 N.Y.2d 462, 191 N.E.2d 272. New Mexico is particularly dependent upon its scenic beauty to attract the host of visitors, the income from whose visits is a vital factor in our economy. Santa Fe is known throughout the whole country for its historic features and culture. Many of our laws have their origin in that early culture. It must be obvious that the general welfare of the community and of the State is enhanced thereby. Bearing in mind all these factors, we hold that regulation of the size of window panes in the construction or alteration of buildings within the historic area of Santa Fe, as a part of the preservation of the "Old Santa Fe Style" of architecture, is a valid exercise of the police power granted to the city. Opinion of the Justices to the Senate, 333 Mass. 773, 128 N.E.2d 557; Opinion of the Justices to the Senate, 333 Mass. 783, 128 N.E.2d 563; Opinion of the Justices, 103 N.H. 268, 169 A.2d 762; City of New Orleans v. Impastato, 198 La. 206, 3 So.2d 559; City of New Orleans v. Pergament, 198 La. 852, 5 So.2d 129; City of New Orleans v. Levy, 223 La. 14, 64 So.2d 798; and see State v. Wieland, 269 Wis. 262, 69 N.W.2d 217. In Best v. Zoning Bd. of Adjustment of the City of Pittsburg, 393 Pa. 106, 141 A.2d 606, 612, the court said:

"Not only is the preservation of the attractive characteristics of a community a proper element of the general welfare, but also the preservation of property values is a legitimate consideration * * *."

Defendants argue together their claim that the ordinance unconstitutionally delegates legislative authority to the style committee and the planning commission and that it fails to furnish adequate standards to guide the commission. It is settled that a legislative body may not vest unbridled or arbitrary power in an administrative agency but must furnish a reasonably adequate standard to guide it. State ex rel. Holmes v. State Board of Finance, 69 N.M. 430, 367 P.2d 925. Standards required to support a delegation of power by the local legislative body need not be specific. Most decisions hold that broad general standards are permissible "so long as they are capable of a reasonable application and are sufficient to limit and define the Board's discretionary powers." Hiscox v. Levine, (1961), 31 Misc.2d 151, 216 N.Y.S.2d 801, 804; Gilman v. Newark, (1962), 73 N.J.Super. 562, 180 A.2d 365, 383; Miller v. Tacoma, (1963), 61 Wash.2d 374, 378 P.2d 464, 473; State v. Wieland, supra. See Ward v. Scott, 11 N.J. 117, 93 A.2d 385, 387, for a full evaluation of broad standards set by various legislatures and held to be valid. In line with the foregoing, the Annotation, 58 A.L.R.2d

1083, 1087, entitled "Attack on validity of zoning statute, ordinance, or regulation on ground of improper delegation of authority to board or officer," points out that:

> "In general, it may be said that there is a growing tendency to sustain delegations of zoning authority guided only by general policy standards, experience having shown that any attempt to limit the administrative decisions to matters of detail as to which precise standards can be laid down results only in creating an inflexible and unworkable zoning plan with resultant pressures on the legislative body for frequent amendments leading to the evils of spot zoning."

See, also, Anderson, Architectural Controls, 12 Syracuse L.R. 26, 44 (1960).

Defendants argue that the exception, "except as otherwise provided" in the "panes of glass" provision makes the requirement meaningless. The ordinance expressly provides at least one exception to the maximum thirty-inch window pane, in permitting larger plate glass windows under portals. Applying the above principles to the terms of the ordinance under consideration, it is apparent that there has not been a grant of uncontrolled power to an administrative agency as in State ex rel. Holmes v. State Board of Finance, supra. As we have pointed out, the purpose of the ordinance is to preserve the historic style of architecture. To that end the "Old Santa Fe Style" is described in great detail, including such things as roof lines, fire walls, inset and exterior portals, canales, decorative panels, etc. The functions and duties of the style committee, as provided by the ordinance, are to conform the architectural style of proposed alterations, with the description in the ordinance and the committee's determination must be based on the standard of:

> " * * * harmony with adjacent buildings, preservation of historical and characteristic qualities, and conformity to the Old Santa Fe Style."

Since the council recognized that it would be impossible to rigidly and literally set forth every detail without impairing the underlying public purpose, it adopted a policy expressed in the ordinance which enables some variances consistent with the public interest and the purpose of the overall zone plan. A reading of the entire historical section of the zoning ordinance makes it apparent the council did, however, provide specific safeguards to insure against arbitrary action or unrestricted administrative discretion. Thus, the style committee is required to report to the city planning commission and it, in turn, to the city council.

In the light of all of the foregoing, we conclude that there is no substantial basis for a claim that the ordinance vests

uncontrolled discretion in an administrative body, nor does it appear that the ordinance fails to furnish the necessary standards to guide the administrative body designated by the ordinance.

Defendants assert that because other buildings in the neighborhood have display windows with panes exceeding thirty-inches square, the defendants are denied the equal protection of the law by reason of failure to enforce the ordinance against others. Defendants point to five photographs of buildings which contain windows with panes in excess of thirty inches. The city has sufficiently explained that the windows complained about as unauthorized variations were exempt from the requirement for a number of reasons.

No evidence of a policy of discrimination or partiality amounting to an arbitrary or capricious administration of the ordinance has been pointed out to us. The courts will not interfere with the discretion vested in the administrative body in the absence of a showing of an abuse of its discretion. Beirn v. Morris, 14 N.J. 529, 537, 103 A.2d 361; Sinclair Refining Co. v. City of Chicago, (7th Cir. 1949), 178 F.2d 214, 217. Furthermore, it is no defense to a prosecution for violating an ordinance that others have been permitted to violate it without prosecution or punishment. Kansas City v. Wilhoit (Kan.City Ct.App., 1951), 237 S.W.2d 919, 924. We find no merit to the assertion that there has been such an unequal and oppressive application of the ordinance as to amount to denial by the State of that equal protection of the laws which is secured to defendants by the Fifth Amendment to the United States Constitution.

Finding no error, the judgment and sentence appealed from are affirmed.

It is so ordered.

COMPTON, C. J., and CARMODY, CHAVEZ, and MOISE, JJ., concur.