Hillsborough,
No. 5242.

TOWN OF DEERING, *ex rel* WILLIAM B. BITTENBENDER

*v.*

EARL TIBBETTS.

Argued June 3, 1964.
Decided July 17, 1964.

*Tiffany & Osborne* (*Mr. Gordon M. Tiffany* orally), for the plaintiff town.

*Nelson, Winer & Lynch* and *Douglas S. Hatfield* (*Mr. Hatfield* orally), for the plaintiff Bittenbender.

*Cleveland, Waters & Bass* (*Mr. Warren E. Waters* orally), for The Deering Community Church, *amicus curiae*.

*Louis P. Faustini* (by brief and orally), for the defendant Tibbetts.

DUNCAN, J.   The agreed statement of facts establishes that the structure which the defendant Tibbetts proposes to erect will be situated within one-fourth mile of Deering common and "is in violation of the ordinance as adopted . . . in that approval of the selectmen has not been obtained." Proper procedures were followed in the adoption of the ordinance and in mid-August 1963 the defendant's application for permission to erect a "pre-built home" on the lot in question (see *Manchester* v. *Phillips*, 343 Mass. 591, 595) was denied by the selectmen "on the

grounds that the nature and design of the building . . . and the intended location of the same, were such as to impair the atmosphere of the Town." The agreed statement further discloses that the plaintiff Bittenbender owns certain land and buildings within one-fourth mile of the common.

It is further agreed that no planning board has been appointed under RSA ch. 36; the selectmen were authorized to appoint a "planning commission" by action taken at the 1961 town meeting and such a commission was appointed and submitted a report to the 1963 town meeting; the latter meeting authorized the selectmen to appoint a zoning commission under RSA 31:65, but no zoning ordinance has been adopted under RSA 31:60-64.

At the March 1964 meeting a proposed zoning ordinance or code of regulations was submitted to the voters, but failed of adoption. At the same meeting a proposal to repeal the 1962 ordinance which gives rise to these proceedings also failed of adoption.

The plaintiffs, and the Community Church which supports their position, assert that the by-law which the town adopted in 1962 is one which it was empowered to enact (RSA 31:39) and a valid exercise of the police power of the town. The defendant contends that the ordinance is not a valid exercise of the statutory authority to establish zoning (RSA 31:60), or of any other statutory power, or of the general police power, because grounded solely upon aesthetic considerations and lacking in adequate standards for the guidance of the selectmen in enforcing the ordinance.

The plaintiffs make no pretense that the ordinance in question is a zoning ordinance. Rather they rely upon the general power of towns to make by-laws "making and ordering their prudential affairs," and in particular "for the care, protection, preservation and use of the public . . . commons, libraries and other public institutions of the town." RSA 31:39, *supra*. See 5 McQuillin, Municipal Corporations (3d *ed.* Rev.) *s.* 15.01. They point out that as early as 1784 the common was a matter of concern to the inhabitants of the town (XI Town Papers of N. H. 494), and that it is today a center upon and about which cluster the meetinghouse of the Community Church, the town hall and the town library. Photographs of these buildings as well as of the adjoining dwelling of the plaintiff Bittenbender show them to be structures typical of early New Hampshire

architecture, so situated about the common as to create a dignified and harmonious center.

The statute relied upon by the plaintiffs would clearly authorize the enactment of by-laws providing for the protection of the common or other "public institutions" by the regulation of conduct in and upon the public grounds and buildings (*cf.* P. S. [1901] *c.* 7, *s.* 5), or by the erection of fencing to enclose such grounds. *Sherburne* v. *Portsmouth*, 72 N. H. 539. The regulation which the plaintiffs seek to enforce however extends beyond the area of public ownership to its periphery of privately-owned property lying within a radius of one-fourth mile. Such a regulation, it is suggested, is a valid exercise of the police power for the purpose not only of preserving the value of the historic buildings about the common but also of promoting the general economy, welfare, and prosperity of the town, and the value of privately-owned properties within it.

That such a purpose is a generally recognized basis for the exercise of the police power is now too well established to be open to question. See *Sundeen* v. *Rogers*, 83 N. H. 253, 256. The fact that aesthetic considerations having a purpose to foster civic beauty and preserve places of historic and architectural value were also factors motivating the enactment is not fatal. *Opinion of the Justices*, 103 N. H. 268. See Laws 1963, *c.* 178 (RSA 31:89-a-j (supp)). "The beauty of a residential neighborhood is for the comfort and happiness of the residents and it tends to sustain the value of property in the neighborhood. It is a matter of general welfare like other conditions that add to the attractiveness of a community and the value of residences there located." *Lexington* v. *Govenar*, 295 Mass. 31, 36-37.

The suggestion made in *Sundeen* v. *Rogers, supra,* 258, that "no very conclusive argument can be advanced to show that the line of legal right on the one hand and liability on the other should be drawn at [the] place" where matters "discerned through smell or hearing" leave off and "matters which are evident to sight only" begin, has now come full circle in some jurisdictions. "Once it be conceded that aesthetics is a valid subject of legislative concern, the conclusion seems inescapable that reasonable legislation designed to promote that end is a valid and permissible exercise of the police power." *People* v. *Stover*, 12 N. Y. 2d 462, 467; see comment, 15 Syracuse L. Rev. 33. See also, 8 McQuillin, Municipal Corporations (3d *ed.* Rev.) *s.* 25.31.

In the case before us it is unnecessary to rely solely upon aesthetic considerations to sustain the exercise of the power invoked. We think it reasonably plain that more than aesthetics is involved.

We are of the opinion likewise that the purpose of the ordinance was one which could properly be accomplished by the enactment of something less than a full-fledged zoning ordinance under RSA 31:60-64, establishing an historic district under RSA 31:89-b (supp) as a part thereof. In the recent case of *Jaffrey* v. *Heffernan*, 104 N. H. 249, 105 N. H. 167, an ordinance imposing a regulation of a "minimum set back of thirty feet from any public highway" was sustained as a valid exercise of the police power, although no zoning ordinance of general application had been enacted. See also, *Slack* v. *Inspector of Buildings of Wellesley*, 262 Mass. 404. While in contrast to the Jaffrey ordinance the ordinance enacted by the town of Deering applies to a limited area of the town only, the difference is not fatal, since the ordinance applies equally to all persons within the district itself. *State* v. *Griffin*, 69 N. H. 1. See *Rockingham Hotel Co.* v. *North Hampton*, 101 N. H. 441; *Marblehead* v. *Rosenthal*, 316 Mass. 124.

We cannot say that the ordinance would not tend to conserve values and encourage appropriate use or that it has no substantial relation to the objects of the police power. *Hudson* v. *Paradise*, 101 N. H. 389, 391. See *New London* v. *Davis*, 73 N. H. 72, 76. We hold that it was a proper exercise of the authority granted by RSA 31:39, adopted for the protection of the public institutions of the town, and for its general welfare.

The question is presented whether the criterion which the ordinance provides for the determination of whether a structure shall be approved or disapproved is so vague as to furnish no valid standard to guide the selectmen in its administration. If it can be and is reasonably determined by the selectmen that the atmosphere of the town of Deering will be maintained if the proposed structure is erected on land bordering the town common, then they are bound to approve it. If it is reasonably determined that that atmosphere will not be maintained, or if it cannot reasonably be determined that it will, then the structure is prohibited.

While determination of what is compatible with the "atmosphere" of the town may on first impression be thought to be a matter of arbitrary and subjective judgment, upon consideration

it proves not to be. As stated in Anderson, "Architectural Controls," 12 Syracuse L. Rev. 26, 45, the language "takes clear meaning from the observable character of the district to which it applies." See also, 1 Rathkopf, The Law of Zoning and Planning (3d *ed.* 1959) 11-29. Examination of the photographs which are exhibits in the case makes it apparent that the "atmosphere" of the center is a standard capable of objective determination. While the defendant suggests that the selectmen are not restricted to consideration of external appearances and their judgment might turn upon the character of the interior of a structure, we think that the ordinance does not reasonably admit of such an interpretation.

The standard which it establishes compares not unfavorably with those provided by the zoning statute (RSA 31:72) as a guide to zoning boards of adjustment ("contrary to the public interest," "unnecessary hardship," the "spirit of the ordinance") and by the recently enacted provision for historic districts: "the relationship . . . to its surroundings," "the compatibility of land uses," "the character and integrity of said district." RSA 31: 89-f (supp). See also, *Hayes* v. *Smith* 92 R. I. 173, 179 ("general compatibility"). A structure which would be "incongruous" or "inappropriate" (Mass., Acts of 1960, *c.* 372, *s.* 6) or incompatible, in the typical environment and characteristic setting of the Deering common would not "maintain" the "atmosphere" of the town in that locale, and may properly be prohibited. "It is not difficult to imagine how the erection of a few wholly incongruous structures might destroy one of the principal assets of the town, and we assume that the boundaries of the districts are so drawn as to include only areas of special value to the public because of possession of those characteristics which it is the purpose of the act to preserve." *Opinion of the Justices*, 333 Mass. 773, 780 (Nantucket). See also, *Opinion of the Justices*, 333 Mass. 783 (Beacon Hill); *New Orleans* v. *Levy*, 223 La. 14 (Vieux Carre); *Hayes* v. *Smith, supra.*

We hold that the ordinance in question is a proper exercise of the police power of the town, and a valid enactment.

*Judgment for the plaintiffs.*

All concurred.