SECOND BAPTIST CHURCH, for itself and on behalf of BUFFINGTON TOWERS LIMITED PARTNERSHIP *v.* LITTLE ROCK HISTORIC DISTRICT COMMISSION

86-308                                    732 S.W.2d 483

Supreme Court of Arkansas
Opinion delivered July 20, 1987

156

*Mitchell, Williams, Selig & Tucker*, by: *Jim Guy Tucker, Cynthia J. Davis*, and *Joe E. Madden, Jr.*, for appellant.

*Mark Stodola*, City Att'y, by: *Thomas M. Carpenter*, Asst.

City Att'y, for appellee.

*Youngdahl & Youngdahl, P.A.*, by: *Thomas H. McGowan,* for *amicus curiae,* Quapaw Quarter Association.

A. WATSON BELL, Special Justice. Appellant appeals from an Order of the Chancery Court affirming Appellee's denial of Appellant's Application for a Certificate of Appropriateness for the construction of a parking lot in the McArthur Park Historic District in downtown Little Rock.

For reversal, the Appellant argues that the Chancellor erred by (1) finding that the Appellee had the authority to reach the decision it did because neither the Historic District Act nor a Little Rock Municipal Ordinance allowed the Appellee to consider use, (2) finding that Appellee's decision was not a denial of equal protection, and (3) finding that Appellee's decision was not arbitrary and capricious. We disagree with Appellant's contentions and affirm.

Appellant owns property in the 600 block of Rock Street in Little Rock, which is located within the McArthur Park Historic District and is bordered on the west by Cumberland Street and on the east by Rock Street. Appellant's church is located adjacent to but outside of the District and one block south of the property.

In 1982, the Appellant voluntarily gave its parking lot to their development of Buffington Towers in order to achieve federal funding for the apartment complex from the Department of Housing and Urban Development. In August of 1983, the Appellant made application to the McArthur Park Historic District Commission for a Certificate of Appropriateness to use the subject property as a parking lot for the church. The application was denied. There was an appeal made on the record of that case to the Chancery Court of Pulaski County, and the decision of the Commission was affirmed. (*Second Baptist Church* v. *Little Rock Historic District Commission,* 83-3694, Pulaski County Chancery Court, Second Division). No appeal was taken from the Chancery decision.

In 1985, the church for itself and on behalf of Buffington Towers Limited Partnership, filed a new Application for Certificate of Appropriateness for a noncommercial, private parking lot on the property. Buffington Towers had entered into a contract to

purchase the property from the church. After an evidentiary hearing, the Commission denied the application on September 5, 1985.

The decision of the Commission was appealed to the Chancery Court of Pulaski County, Third Division, pursuant to Ark. Stat. Ann. §19-5009 (Repl. 1980). After a hearing, the Court affirmed the Commission's decision and dismissed the church's appeal.

■ Appellant first argues that the Trial Court erred in finding that the decision of the Commission was within its authority alleging that neither the Historic District Act nor Little Rock Municipal Ordinance No. 14 grant the Commission the authority to consider proposed use. Our review herein requires us to pass for the first time on the legislature's enactment of the Historic District Act, Ark. Stat. Ann. § 19-5001, et seq. (Repl. 1980). With the passage of the Historic District Act, the Arkansas Legislature allowed qualified municipalities to take steps to protect places of historic interest within their boundaries. Ark. Stat. Ann. § 19-5002 (Repl. 1980). It authorizes the use of historic districts to promote the educational, cultural and economic welfare of a community which has been deemed a legitimate use of the police powers by numerous state and federal courts. *See e.g., Maher* v. *City of New Orleans*, 516 F.2d 1051, 1058-59 (5th Cir. 1975); *Opinion of the Justices*, 128 N.E.2d 557, 562 (1955); *City of Sante Fe* v. *Gamble-Skogmo, Inc.* 73 N.M. 410, 389 P.2d 13 (1964); *Town of Deering* v. *Tibbets*, 105 N.H. 481, 202 A.2d 232, 234 (1964); *Lafayette Park Baptist Church* v. *Scott*, 553 S.W.2d 856 (1977).

■ In order to avail itself of the Act, a municipality must take measures to form an Historic District Commission to act upon requests for Certificates of Appropriateness to build, destroy or modify structures within an historic district. Ark. Stat. Ann. § 19-5003 (Repl. 1980). The Act includes an absolute prohibition against property owners taking any of these steps before obtaining a certificate. Ark. Stat. Ann. § 19-5005 (Repl. 1980).

Appellant argues that pursuant to Ark. Stat. Ann. § 19-5005 (Repl. 1980), the legislative intent of the Act was to limit the authority of the Commission to matters dealing with exterior

architectural features only, and does not permit the Commission to consider the proposed use in determining whether to approve or deny an application. The Appellant's argument ignores, when read as a whole, Ark. Stat. Ann. § 19-5006 (Repl. 1980), which states:

> Commission not to be concerned with interior architectural features.—In its deliberations under this Act, the Commission shall not consider interior arrangement or use and shall take no action under this Act *except for the purpose of preventing the construction, reconstruction, alteration, moving or demolition of buildings, structures or appurtenant fixtures, in the Historic District obviously incongruous with the historic aspects of the District.* (Emphasis added)

In construing the legislative intent of the Act, we must consider the plain wording of the Act and must look to the legislative objectives in applying the legislation. *Ragland* v. *Alpha Aviation, Inc.*, 285 Ark. 182, 686 S.W.2d 391 (1985). It is quite clear that an Historic District Commission may consider use only for the purpose of denying a certificate and, while the Commission does not have the authority to grant certain uses of property, it does have the authority to deny certain uses if those uses are "obviously incongruous with the historic aspects of the District." Here, the Commission found that construction of the parking lot as proposed in the Appellant's application would be totally incongruous with the historic aspects of the District, especially in view of the proposed location of the parking lot on a fringe or border area of the District. We cannot say that this finding by the Commission was outside of the scope of what the legislature intended with the passage of the Historic District Act. In fact, we believe that the statute grants the Commission the authority to make the precise finding that it did in this case. The General Assembly declared that the purpose of the Act

> . . .is to promote the educational, cultural, economic and general welfare of the public through the preservation and protection of. . . sites, places and districts of historic interest. . . through the development of appropriate settings for "historical" buildings, places and districts. Ark. Stat. Ann. § 19-5002 (Repl. 1980)

Thus, an Historic District Commission may prohibit a particular use of property within a district in order to develop an appropriate setting for historical buildings if that use is obviously incongruous with the historic nature of the district. We believe that an Historic District Commission is given authority to preserve the district.

Tom Johnson, an architect who testified before the Commission, introduced several photographs and maps showing the Commission the number of parking lots in the area. He pointed out that approximately 50% of the land outside the District is surfaced parking. Johnson then quoted from the criteria for meeting the National Register of Historic Places as follows:

> . . .I would like to tell you the National Register criteria for a Historic District, and I quote to you, "is a geographically defined area, urban or rural possession, and significant concentration linkage for continuity of site, building, structures, or objects united by past events or by plan or by physical development."
>
> *And in evaluating the Historic District for National Register eligibility, "Parking lots are considered to be incompatible intrusions whereas vacant lots are not considered to detract from the history."* [Testimony of Tom Johnson (R. 70)] [Emphasis added]

Mr. Johnson's testimony was credible evidence which supports the Commission's finding that a parking lot at that particular location would be obviously incongruous with the historical aspects of the District.

Appellant next argues that the Commission denied it equal protection of law because it is not being allowed to build the subject parking lot. Discriminatory action by a governmental administrative body must have a rational basis in order to withstand an equal protection challenge. *Milnot* v. *Arkansas State Board of Health*, 388 F. Supp. 901 (E.D.Ark. 1975). Establishing that different applicants are treated differently does not prove the denial of equal protection. *City of Sante Fe* v. *Gamble-Skogmo, Inc.*, 73 N.M. 1401, 389 P.2d 19 (1964). A sufficient explanation of different treatment to applicants will

meet an equal protection challenge. *Id.* In this case, there was sufficient evidence presented to the Commission explaining why two other parking lot applications were approved and the one herein was not. The fact that the property in question is on a "fragile" boundary of the District distinguishes this application from the others, and the Appellant did not demonstrate a systematic course of conduct evidencing discrimination against nonresident landowners within the District. The record is silent with respect to any evidence that any landowner within the District had been permitted by the Commission to build a parking lot where a non-landowner had been denied on the same request. To establish purposeful discrimination, it must be shown that the decision makers selected a course of action in part because of its adverse effects on an identifiable group. *Norcross* v. *Sneed*, 573 F. Supp. 533 (W.D. Ark. 1983) and *Massachusetts* v. *Feeney*, 442 U.S. 256 (1979). Appellant's assertion that although neither the statute nor the ordinance distinguish between residents and nonresidents of the District, there is substantial evidence of inherent prejudice by the Commission against property owners outside the District is not supported in the record. Even so, municipalities are permitted to impose restrictions on nonresidents if doing so would further a legitimate state interest. *See, Arlington County Board* v. *Richards*, 434 U.S. 5 (1977). We do not find that the Appellant has been singled out as the only group prohibited from building such a parking lot. The Commission's decision was a valid exercise of a legitimate state interest.

▬▬▬ Finally, the Appellant argues that the Commission's decision was arbitrary and capricious. In zoning cases, the Chancellor does not conduct a de novo review, but rather determines if the municipality's action is arbitrary and capricious. *McMinn* v. *City of Little Rock*, 275 Ark. 458, 631 S.W.2d 288 (1982). If there is a reasonable basis for the finding, the Chancellor should find the decision was *not* arbitrary and capricious. The standard of appellate review of a Chancellor's finding that a City Zoning Board did not act arbitrary, capricious or unreasonable is whether it is clearly against the preponderance of the evidence. *McMinn* v. *City of Little Rock, supra.* The question before this Court is whether there is evidence in the record to support the Commission's finding.

▬▬▬ In viewing the totality of the evidence presented to the

Commission, we cannot say that the Chancellor's finding that the Commission's action was not arbitrary, capricious and unreasonable was clearly against the preponderance of the evidence. In this case, the Commission took supporting evidence from both sides on the issue of whether the building of the subject parking lot at the particular location in question would be obviously incongruous with the historic aspects of the District. Based upon all of the evidentiary matters presented, the Commission found the parking lot impermissible. The Chancellor applied the proper standard of review as required by law and even if our judgment on the issue would differ from the Commission's, we are compelled to reverse only if we find the Chancellor's decision clearly against the preponderance of the evidence. Rule 52, Arkansas Rules of Civil Procedure. We do not and, thus, find the Appellant's argument without merit.

In conclusion, we do not believe that the Commission exceeded its quasi-legislative authority in its finding that a parking lot at this particular location would be obviously incongruous with the historic aspects of the District, nor do we believe that the Appellant was denied equal protection of the law. The Chancellor's finding that the Commission's decision was not arbitrary or capricious is not clearly against the preponderance of the evidence presented before the Commission, and must be affirmed.

Affirmed.

PURTLE AND GLAZE, JJ., dissent.

HAYS and NEWBERN, JJ., not participating.

TOM GLAZE, Justice, dissenting. After today's decision, the City of Little Rock will have two city planning commissions, not one, which will have the power to determine land use. Obviously, when those two commissions differ in the future on what uses the land within historic districts may be put, a conflict again will be ripe for more litigation similar to that posed here. The Little Rock City government—which represents the Historic Commission in this case—then will be placed in the ironic position of arguing the other side of this lawsuit, now argued by the Second Baptist Church. While the majority court refers to the "limited power" of the Historic Commission to consider use only when denying a

certificate of appropriateness under the Historic Districts Act, that so-called limited power will prove most frustrating to the city when the Historic District Commission, in the future, disagrees with the city planning commission's decision to put property within a historic district to a use with which the Historic Commission disagrees. Since this decision impacts municipalities and historic commissions elsewhere in the state, I submit the potential conflict I describe is inevitable.

Actually, my concern is not that conflicts or litigation will inevitably occur between city governments (planning commissions) and historic commissions. Rather, my point is that I find it difficult to believe the General Assembly, when it enacted the Historic Districts Act, had intended that our municipalities' right to zone or to determine the use of properties within their corporate limits should in any way be shared or diminished. I believe a fair and reasonable interpretation of the Act bears out my position.

The two statutory provisions of the Act in issue here are Ark. Stat. Ann. §§ 19-5005 and -5006 (Repl. 1980). Those laws in relevant part provide:

> § 19-5005. *No building or structure . . . shall be erected*, altered, restored, moved, or demolished within an (sic) historic district *until after an application for a certificate of appropriateness as to exterior architectural features has been submitted to and approved by the Commission* . . . For purposes of this act [§§ 19-5001—5011] "exterior architectural features" shall include the architectural style, general design and general arrangement of the exterior of a structure, including the kind and texture of the building material and the type and style of all windows, doors, light fixtures, signs and other appurtenant fixtures. The style, material, size and location of outdoor advertising signs and bill posters within an (sic) historic district shall also be under the control of the Commission. (Emphasis supplied.)

> § 19-5006. [T]he *commission shall not consider interior arrangement or use* and shall take no action under this act except for the purpose of preventing the construction, reconstruction, alteration, restoration, moving or demolition of buildings, structures or appurtenant fixtures, in the

Historic District obviously incongruous with the historic aspects of the District. (Emphasis supplied.)

In reading § 19-5006, it becomes immediately apparent that the General Assembly mandated that historic commissions *shall not consider* interior arrangements or *use* when taking action under the Act. Nevertheless, the Little Rock Historic District Commission ignores those plain words of proscription, and argues, quite imaginatively and obviously persuasively to this court, that the remaining language in § 19-5006 permits a historic commission to consider use only to prevent any construction that is incongruent with the historic aspects of a district. I am surprised the majority accepted such a suggestion of legislative intent.

One need only ask two questions to see the fallacy in the Historic Commission's argument. If the Commission's argument were true, why did the General Assembly, under § 19-5006, prohibit historic commissions from considering use at all? If the General Assembly intended historic commissions to have zoning powers over the use of property within a district, why didn't it provide for it in the Act? Clearly, no express provision granting such power is contained in the Act. Knowing the General Assembly is well aware of how to provide such power leads me to one conclusion: It did not intend to grant it. To accept the Little Rock Historic District Commission's interpretation of this legislation is like saying, "You shall not consider use, however, you may do so when you deem it necessary."

I submit the correct interpretation of § 19-5006 can be understood only by considering it in light of the language in § 19-5005. Section 19-5005 provides "*no building or structure*" can be erected within a historic district *until* the *commission approves* an applicant's request for a certificate of appropriateness "as to *exterior architectural features.*" Thus, in reading §§ 19-5005 and -5006 in harmony, the General Assembly expressly provided that a historic commission has power to approve the exterior architectural features of any building or structure to be erected in the district; it cannot consider interior arrangement or use when considering its action; except it may prevent any construction incongruous with the historic aspects of the district until the exterior architectural design of the construction is approved by

166

the commission. Sections 19-5005 and -5006 expressly provide no more and no less than a historic commission's authority to control the exterior design of structures within its district. This court's decision to say otherwise can only be labeled judicial legislation.

PURTLE, J., joins in this dissent.