Rockingham
Nos. 99-046
 00-348

### KENNETH WEBSTER AND MARGARET DEMOS, AS TRUSTEES OF THE KENNETH WEBSTER TRUST & a.

v.

### TOWN OF CANDIA & a.

### JULEE SANDERSON, AS TRUSTEE OF CANDIA RANGEWAY REALTY TRUST

v.

### TOWN OF CANDIA & a.

May 21, 2001

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Robert E. Murphy, Jr.* on the brief), for plaintiffs Kenneth Webster and Margaret Demos, as Trustees of the Kenneth Webster Trust, and Winthrop Sargeant.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Thomas Quarles, Jr.* and *Matthew R. Johnson* on the brief, and *Mr. Quarles* orally), for plaintiff Julee Sanderson, as Trustee of Candia Rangeway Realty Trust.

*Upton, Sanders & Smith*, of Concord (*Barton L. Mayer* and *Lauren S. Irwin* on the briefs, and *Mr. Mayer* orally), for the defendants.

DALIANIS, J. In this consolidated appeal, plaintiffs Kenneth Webster and Margaret Demos as Trustees of the Kenneth Webster Trust, and Winthrop Sargeant (Webster plaintiffs), appeal the Superior Court's (*Galway*, J.) order affirming the decision of the Town of Candia Planning Board (planning board) denying their application to remove trees from Libbee Road, a designated scenic road. Plaintiff Julee Sanderson, as Trustee of Candia Rangeway Realty Trust (Sanderson), appeals the Superior Court's (*Abramsom*, J.) order affirming the planning board's decision denying her application to remove trees from Libbee Road. Sanderson also appeals the Superior Court's (*Coffey*, J.) order denying her motion for reconsideration. We affirm.

In June 1998, the Webster plaintiffs requested planning board consent to cut 256 trees on Libbee Road. At the time, they owned approximately 260 acres of land situated between Libbee and Baker Roads on which they planned to develop a cluster subdivision. The Webster plaintiffs sought to remove trees so that Libbee Road could be reclassified from a class VI to a class V highway, as required by the town's cluster subdivision ordinance. On August 5, 1998, following a hearing, the planning board denied the Webster plaintiffs' request.

The Webster plaintiffs eventually sold their land to Sanderson. In March 1999, Sanderson submitted a plan to cut approximately twenty-five trees on Libbee Road. The planning board denied this request in September 1999. Although the Webster plaintiffs no longer own the land, Sanderson has pursued their claims on appeal.

■ "[W]e will uphold the trial court unless its decision is not supported by the evidence or is legally erroneous." *Mt. Valley Mall Assocs. v. Municipality of Conway*, 144 N.H. 642, 647 (2000) (quotation omitted). "We look to whether a reasonable person could

have reached the same decision as the trial court based on the evidence before it." *Id.* (quotation omitted).

Sanderson argues that because the trial court's order affirming the planning board's September 1, 1999 decision was based solely upon the record, a "broade[r]" standard of review applies. To the contrary, we use the same standard of review, regardless of whether the appellate record consists only of the planning board's certified record. *See id.* at 646-47.

## I. Constitutionality of Scenic Road Statute

The plaintiffs assert that RSA 231:158 (1993), prohibiting cutting trees or destroying stone walls on designated scenic roads absent permission from the planning board (or other "official municipal body"), is impermissibly vague and thus void under the New Hampshire Constitution. Because the constitutionality of a statute involves a question of law, we review the superior court's determination *de novo. See id.* at 648.

"Due process requires that a statute proscribing conduct not be so vague as to fail to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *In re Justin D.*, 144 N.H. 450, 453 (1999) (quotation omitted). "The necessary specificity . . . need not be contained in the statute itself, but rather, the statute in question may be read in the context of related statutes, prior decisions, or generally accepted usage." *Id.* at 453-54 (quotation omitted). "The party challenging the statute as void for vagueness bears a heavy burden of proof in view of the strong presumption of a statute's constitutionality." *Id.* at 454 (quotation omitted).

RSA 231:158 provides, in pertinent part:

> Upon a road being designated as a scenic road as provided in RSA 231:157, any repair, maintenance, reconstruction, or paving work done with respect thereto by the state or municipality . . . shall not involve the cutting, damage or removal of trees [of a particular circumference], or the tearing down or destruction of stone walls, or portions thereof, except with the prior written consent of the planning board, or any other official municipal body designated by the meeting [of the town voters] to implement the provisions of this subdivision . . . .

RSA 231:158, II. Unless certain exceptions apply, the statute requires the planning board to conduct a duly noticed public hearing on any plan to remove trees or stone walls from a designated scenic road. *Id.*

■ This statute is sufficiently clear to warn the average person of the prohibited conduct (cutting trees of a specific circumference or destroying stone walls on designated scenic roads) and that if he or she wishes to engage in the prohibited activity, he or she must first obtain written planning board consent. We hold therefore that RSA 231:158 is not unconstitutionally vague. *See Asselin v. Town of Conway*, 137 N.H. 368, 371 (1993).

■ The plaintiffs argue that the statute is void because it does not apprise an applicant of the standards that the planning board, or other official municipal body, will use when reviewing plans to cut trees or destroy stone walls on scenic roads. "[A law] is not necessarily vague because it does not precisely apprise [an applicant] of the standards by which an administrative board will make its decision." *Town of Freedom v. Gillespie*, 120 N.H. 576, 580 (1980). In *Gillespie*, a municipal ordinance gave the local planning board power to approve plans for constructing or repairing septic systems and to grant variances. *Id.* at 578. The ordinance did not specify the standards by which the planning board would assess variance requests. *Id.* at 580. Nevertheless, we upheld it, holding it implied that the planning board would use the standards for granting variances contained in its subdivision regulations. *Id.*

■ We similarly decline to find RSA 231:158 vague because it does not specify the standards the planning board will use when reviewing plans for tree cutting or stone wall destruction on designated scenic roads. We find it implied that the planning board will exercise its discretion consistent with the purpose of the road's scenic designation. *See id.; cf. Derry Sand & Gravel, Inc. v. Town of Londonderry*, 121 N.H. 501, 505-06 (1981) (ordinance permitting selectmen to issue private dump or junk yard licenses upon "good cause and sufficient reason" not vague; given ordinance's stated purpose, "good cause and sufficient reason" are circumstances that provide for "orderly" and "sanitary" disposal of garbage).

The warrant articles by which the town voted to designate Libbee Road as scenic specify that the purpose of so doing was to "protect[] and enhanc[e] . . . the scenic beauty of Candia." *See also* N.H.S. JOUR. 708 (1971) (purpose of scenic road statute is to "encourage the tourist attractiveness of our scenic roads in our towns and . . . permit the retention of trees and stone walls so characteristic of our New England scenery"). In context, then, RSA 231:158 informs a developer that any plan to cut trees or remove stone walls from a designated scenic road must not destroy the "scenic beauty" of the

road. This is sufficient notice to developers of the relevant standards.

The legislature would have been hard pressed to define the concept of "scenic beauty" more specifically. *See Finks v. Maine State Highway Commission*, 328 A.2d 791, 796 (Me. 1974). We agree with the Maine Supreme Judicial Court and the New Jersey Supreme Court that:

> "The Act contemplates that there is a certain basic beauty in natural terrain and vegetation unspoiled by the hands of man, which it proposes to recapture or maintain. Although the extent to which each individual finds a specific landscape beautiful must be determined by a subjective test, this does not denote that there is no catholic criterion for the ascertainment of whether *any scenic beauty* exists in a given panorama. 'Scenic beauty' is concerned with such manifold possible situations that it does not lend itself to a more specifically detailed descriptive statement. A tabulation of the various possible elements constituting scenic beauty is well-nigh impossible."

*Id.* (quoting *Wes Outdoor Advertising Company v. Goldberg*, 262 A.2d 199, 202 (N.J. 1970)).

Moreover, the concept of "scenic beauty[], although more generally used in a subjective sense, connotes, in terms of [the scenic road statute], a sufficiently definite concrete image . . . to furnish in and of itself an adequate standard." *Id.*

We reached a similar conclusion in *Deering v. Tibbetts*, 105 N.H. 481 (1964). In *Tibbetts*, we were asked to rule upon the validity of a zoning ordinance prohibiting erection of any building within one-quarter mile of the town common absent prior planning board approval and requiring that the location of the building maintain the town's atmosphere. *Id.* at 482. We found the ordinance contained sufficiently clear criteria to guide the selectmen in its administration:

> If it can be and is reasonably determined by the selectmen that the atmosphere of the town . . . will be maintained if the proposed structure is erected on the land bordering the town common, then they are bound to approve it. If it is reasonably determined that that atmosphere will not be maintained, or if it cannot reasonably be determined that it will, then the structure is prohibited.

> While determination of what is compatible with the "atmosphere" of the town may on first impression be thought to be a matter of arbitrary and subjective judgment, upon consideration it proves not to be . . . . [T]he language takes clear meaning from the observable character of the district to which it applies.

*Id.* at 485-86 (citation and quotation omitted); *see also Durant v. Town of Dunbarton*, 121 N.H. 352, 355-56 (1981) (subdivision regulation prohibiting subdivision on land that cannot be *"safely* used" for building purposes because of "exceptional *danger to health"* or *"other menace"* was not impermissibly vague); *Bethlehem v. Robie*, 111 N.H. 186, 187 (1971) (zoning ordinance prohibiting uses "detrimental or injurious" to adjoining property "furnishes sufficient criterion" for guiding selectmen and board of adjustment).

■ The plaintiffs also argue that the statute was vague as applied to them. To determine whether a statute is vague as applied, we examine "whether the statute provided [the plaintiff] with a reasonable opportunity to know [what conduct the statute prohibited]." *In re Justin D.*, 144 N.H. at 454. Under the facts of this case, we hold that the statute gave the plaintiffs "adequate warning" that they could not cut certain kinds of trees absent planning board consent. *See id.* The statute was thus not impermissibly vague as applied to them.

Alternatively, Sanderson asserts that the scenic road statute is an impermissible delegation of legislative power. We disagree.

The legislature has deemed scenic roads to be a matter of local concern and has delegated the authority to designate scenic roads to local voters, *see* RSA 231:157, and the authority to regulate tree and stone wall removal from these roads to the local planning board or other "official municipal body" selected by the voters, RSA 231:158, II. *See Neville v. Highlands Farm*, 144 N.H. 419, 423 (1999). This delegation of authority is proper. *See Opinion of the Justices (Tax Plan Referendum)*, 143 N.H. 429, 442-43 (1999) (permissible to delegate power of local legislation to citizens and town provided that legislation involves matter of local concern).

## II. "Takings"

The plaintiffs argue that the planning board's decisions constituted "takings" in violation of the State and Federal Constitutions. *See* N.H. CONST. pt. I, art. 12; U.S. CONST. amends. V, XIV.

.We first address the plaintiffs' arguments under our State Constitution, using federal law only as an aid in our analysis. *See State v. Ball*, 124 N.H. 226, 231 (1983). Because the Federal Constitution affords the plaintiffs no greater protection than does the State Constitution, we do not undertake a separate federal analysis. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1014-19 (1992); *Burrows v. City of Keene*, 121 N.H. 590, 596-98 (1981).

■ The Webster plaintiffs assert that the planning board's decision was a "taking" because it deprived them of "reasonable access" to their property. Sanderson asserts that the planning board's decision was a "taking" because it deprived her of "an economically viable use of the [p]roperty." Specifically, Sanderson argues that because of the planning board's decision, she may only build two single-family homes on the 260-acre parcel. Neither claim is viable.

While arbitrary or unreasonable restrictions which substantially deprive the owner of the economically viable use of his or her land may constitute a taking, *Dumont v. Town of Wolfeboro*, 137 N.H. 1, 9 (1993), the "failure to take discretionary affirmative action that would arguably have increased the value of [a landowner's] property" does not. *Rockhouse Mt. Property Owners Assoc. v. Town of Conway*, 127 N.H. 593, 601 (1986). In this case, the planning board's failure to permit the plaintiffs to remove trees from Libbee Road is in no sense a taking. *Id.*

Moreover, even if the planning board's failure to permit the plaintiffs to remove trees could somehow be viewed as a regulatory restriction, it would be constitutionally permissible.

Contrary to the Webster plaintiffs' assertions, their interest in changing the classification of Libbee Road from a class VI to a class V highway is not constitutionally protected. "A landowner's vested right of access consists only of access to the system of public highways not of a particular means of access." *Merit Oil of N.H., Inc. v. State*, 123 N.H. 280, 281 (1983) (quotation omitted). The planning board's decision "neither deprived the [Webster] plaintiff[s] of access to the general system of highways nor physically changed the actual entranceways to the property." *Id.*

Similarly, even if, as Sanderson claims, the planning board's decision deprived her of the ability to build more than two single-family dwellings on her property, it did not substantially deprive her of the property's economically viable use. "Although [Sanderson] may not have made as complete use of [the] property as [she] could have wished, the value of [her] property was not

substantially destroyed . . . ." *Funtown v. Town of Conway*, 127 N.H. 312, 318 (1985).

### III. Webster Plaintiffs

#### A. Alternative Access

■ The Webster plaintiffs argue that the trial court erred in finding the planning board's decisions reasonable and lawful. We hold that the trial court's ruling was supported by the evidence and was not legally erroneous. *See Mt. Valley Mall Assocs.*, 144 N.H. at 647.

The Webster plaintiffs argue that the planning board impermissibly considered whether there was alternative access to the property. This argument is unavailing. The alternative means of access, Baker Road and Flint Road, are not designated scenic roads. Thus, it was reasonable for the planning board to consider whether alternatives to cutting trees on a scenic road existed.

Equally unavailing is the Webster plaintiffs' argument that there was no evidence to support the planning board's determination that alternative access existed. Both the written minutes and transcript of the meeting support the planning board's determination. As the Webster plaintiffs observe, their own agent testified about alternative access at the planning board meeting.

In their brief, the Webster plaintiffs acknowledge that Flint and Baker Roads provide access to the property. They contend, however, these means of access are "not appropriate" because their development would have a greater impact on wetlands. They argue that, for this reason, the New Hampshire Wetlands Board "could not" approve the development of these roads.

This evidence was not before the planning board when it determined that alternative access to the property existed. Thus, the trial court could reasonably have found that, given the evidence before it, the planning board's determination was neither illegal nor unreasonable. *See Mt. Valley Mall Assocs.*, 144 N.H. at 646.

The Webster plaintiffs also argue that the planning board's consideration of alternative access violated their constitutional rights to due process. We disagree.

■ The Webster plaintiffs argue that they "never received notice that the Planning Board would consider the possibility of alternative accesses" and that this failure violated their constitutional right to procedural due process. The record shows, however, that they received both adequate notice and an opportunity to be heard on their request to cut trees from Libbee Road. This is all the

procedure due process requires. *See Douglas v. Douglas*, 143 N.H. 419, 423 (1999).

The Webster plaintiffs further contend that the lack of criteria governing the planning board's review of plans to cut trees from scenic roads violated their constitutional right to due process. This argument is essentially the same as the argument that RSA 231:158 is void for vagueness, and we reject it for the same reasons.

We need not address the Webster plaintiffs' arguments concerning the other reasons for the planning board's denial as they failed to devote more than a "passing reference" to these issues in their brief. *See N.E. Tel. & Tel. Co. v. City of Franklin*, 141 N.H. 449, 454 (1996). Moreover, they failed to include any claims of error related to these other reasons in their notice of appeal, and thus have failed to preserve these arguments for our review. *See State v. Martin*, 145 N.H. 313, 315 (2000).

### B. Notice of Decision

The Webster plaintiffs assert that the planning board's notice of decision was unreasonable and unlawful because it did not include reasons for the planning board's denial. While they concede that they were given the minutes of the meeting, they assert that the minutes were insufficient. We disagree.

 The Webster plaintiffs do not cite to any statute or regulation requiring the planning board to include reasons in its notice of decision regarding the denial of a request to cut trees on a scenic road. Even assuming such a requirement exists, the argument is meritless. *See K & P, Inc. v. Town of Plaistow*, 133 N.H. 283, 290 (1990) (letter and minutes setting forth reasons for denial of subdivision application sufficed). The evidence before the trial court, including the approved and unapproved minutes of the meeting, reasonably supports a finding that the reasons for the denial were adequately set forth. *See id.*

We have considered the Webster plaintiffs' remaining arguments and find them to be without merit, warranting no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

### IV. Sanderson

### A. Planning Board's Reasons

Sanderson argues that each of the planning board's reasons for its denial of her request to cut trees on Libbee Road "either exceeded the Planning Board's statutory authority, was pretextual, or contradicted the prior stated position of the Planning Board with respect

to [the] proposed development." "If any of the board's reasons for denial support its decision, then the plaintiff's appeal must fail." *Durant*, 121 N.H. at 354.

██ The planning board denied Sanderson's request to cut trees on Libbee Road, in part, because it found that the proposed tree cutting "would lead to the deterioration of the scenic quality of the road." Sanderson argues that, in fact, the tree removal would not deteriorate the road's scenic quality. The record reveals that the board went on two site walks of Libbee Road and viewed the trees to be removed. It was entitled to rely upon its observations of the area in concluding that removing the trees would impair the road's scenic quality. *See id.* at 357.

The planning board also denied Sanderson's request on a number of other grounds, including: (1) Sanderson's failure to mark all of the trees to be removed; and (2) the lack of study or documentation about how removing the trees would affect the drainage for other trees on Libbee Road. Sanderson questions the planning board's authority to deny her request on these grounds, and asserts that these reasons were "pretextual." We agree with the trial court that, in the context of reviewing a request to cut trees on a scenic road, the planning board was entitled to review whether the number of trees represented in Sanderson's request was accurate and whether cutting the trees would affect other trees on the scenic road, requiring their removal.

We need not reach the other reasons the planning board gave for denying Sanderson's request because we hold that the three reasons, discussed above, support the planning board's action. *See id.* at 356.

Accordingly, we find the trial court's ruling upholding the planning board's decision reasonable in light of the evidence before it. *See Mt. Valley Mall Assocs.*, 144 N.H. at 647.

### B. Planning Board Member Bias

██ Sanderson argues that the trial court erred in failing to find that planning board member Kim Byrd should have recused himself or been disqualified for bias. The trial court ruled that Sanderson failed to allege specific facts showing that Byrd was biased and, on that basis, declined to find that his participation was improper. We hold that the trial court's ruling was not erroneous. *See id.*

"Administrative officials who serve in an adjudicatory capacity are presumed to be of conscience and capable of reaching a just and fair result. The burden is upon the party alleging bias to present

sufficient evidence to rebut this presumption." *Petition of Grimm,* 138 N.H. 42, 52 (1993) (citations omitted). A motion for recusal should be supported by a sufficient affidavit of personal bias or other disqualification. *Id.* Moreover, "[r]easons for disqualification do not include . . . knowledge of the facts involved gained in the performance of the member's official duties." RSA 673:14, I (Supp. 2000).

To support her request for recusal, Sanderson submitted a letter from her attorney stating that Byrd should recuse himself because: (1) his wife was a "leading proponent" of a petition to repeal the cluster zoning ordinance "which was designed to prevent [Sanderson] from developing [her] property as a cluster development"; (2) at the January 2, 1999 hearing on Sanderson's cluster subdivision proposal, Byrd had a prepared document entitled "Reasons to Deny Libbee Road Cluster Subdivision"; and (3) Byrd's conduct was the subject of litigation between Sanderson and the town.

In addition, in her writ, Sanderson alleged that it was Byrd's motion denying her request to cut trees which the board eventually adopted. Sanderson also directed the court to detailed concerns raised in a related case regarding her subdivision application.

All but one of Sanderson's allegations concern her cluster subdivision application. The only allegation that concerns Byrd's alleged bias as to Sanderson's request to cut trees is that he moved to deny the request. This he was entitled to do. His motion was not evidence of "prejudgment," but of judgment exercised at the appropriate time and place. Nor was it evidence of "bias." *See City of Dover v. Kimball,* 136 N.H. 441, 447 (1992).

### C. Sua Sponte Dismissal

Sanderson asserts that the trial court erred by dismissing her petition *sua sponte.* She first argues that the court should have held a hearing, pursuant to RSA 677:15, III, to determine whether to receive additional evidence. *See* RSA 677:15, III (1996) (amended 2000). We disagree.

"[T]his court is the final arbiter of the intent of the legislature as expressed in the words of the statute." *Appeal of N.H. Dep't of Transportation,* 144 N.H. 555, 556 (1999) (quotation omitted). "When construing the meaning of a statute, we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings of the words used." *Id.* (quotation omitted).

RSA 677:15, III governs review of planning board decisions. It provides, in pertinent part: "If, upon the hearing, it shall appear

to the court that testimony is necessary for the proper disposition of the matter, it may take evidence . . . ." Although it refers to a hearing, RSA 677:15, III does not require the court to conduct one to determine if additional evidence is necessary.

Sanderson next argues that the trial court erred by not conducting an evidentiary hearing on the merits of her claims. "The purpose of the statutory provisions for the receipt of . . . additional evidence is not to afford the appealing party a trial *de novo*, which is no longer available, but rather to assist the court in evaluating the action of the board." *Sweeney v. Dover*, 108 N.H. 307, 309 (1967) (citation, quotation and brackets omitted) (decided under prior law). Moreover, it is the trial "court's prerogative to determine whether admission of further evidence would advance justice or judicial economy." *Mt. Valley Mall Assocs.*, 144 N.H. at 656 (quotation omitted). "The trial court is in the best position to determine the sufficiency of the record before it." *Id.* We review the trial court's decision for an abuse of discretion. *See Peter Christian's v. Town of Hanover*, 132 N.H. 677, 683-84 (1990).

■■■ In this case, because of its unique procedural posture, the trial court had before it the certified record of the planning board proceedings and the pleadings in the instant case as well as those in Sanderson's related cases. Under the facts of this case, it was not an abuse of discretion for the trial court not to admit additional evidence. *See Mt. Valley Mall Assocs.*, 144 N.H. at 656 (no abuse of discretion where superior court had before it extensive certified record, the benefit of exhaustive pleadings and arguments of counsel); *Price v. Planning Board*, 120 N.H. 481, 486 (1980) (no abuse of discretion where trial court had record of proceeding before the board as well as arguments of counsel) (decided under prior law).

Sanderson further asserts that the trial court's error was compounded because she had no prior opportunity to develop discovery on many of her claims, including her assertion that planning board member Byrd violated the Right-to-Know Law and that the planning board's decision violated her constitutional right to equal protection. We disagree. Consistent with RSA 677:15, the court was entitled to rely upon Sanderson's allegations alone and to dismiss them *sua sponte* if it found them lacking as a matter of law. *See Kennedy v. Titcomb*, 131 N.H. 399, 402 (1989); *see also* SUPER. CT. R. 58.

■■■ For instance, Sanderson's right-to-know claim was premised upon the allegation that Byrd contacted planning board members

outside of public meetings to "lobby" them to deny her application. Even if true, this allegation did not establish a violation of the Right-to-Know Law. The Right-to-Know Law does not apply to isolated conversations among individual members outside of public meetings, unless the conversations were "planned [or] intended for the purpose of discussing matters relating to official business" and the public entity made decisions during them. *See* RSA 91-A:2, I (Supp. 2000). Although Sanderson alleged that the conversations were intended to discuss matters related to official business, she did not allege that any decisions were made during them.

Similarly, Sanderson's equal protection claim was premised upon the allegation that of the town's seven other scenic roads, six are paved. This allegation, on its face, did not establish differential treatment of similarly situated landowners. *See Petition of Abbott*, 139 N.H. 412, 417 (1995).

Although Sanderson mentions that the court's *sua sponte* dismissal violated her due process rights, she did not raise this constitutional claim in her motion for reconsideration. It is therefore not preserved for appeal, and we decline to review it. *See State v. Patterson*, 145 N.H. 462, 466-67 (2000).

### D. Motion for Reconsideration

Sanderson argues that the trial court erred by failing to grant her motion for reconsideration. We disagree.

"A motion for reconsideration allows a party to present points of law or fact that the Court has overlooked or misapprehended. We will uphold a trial court's decision on a motion for reconsideration absent an abuse of discretion." *Smith v. Shepard*, 144 N.H. 262, 264 (1999) (quotation omitted).

Sanderson first asserts that the trial court erred because she submitted additional "evidence" of planning board member Byrd's bias, consisting of an interrogatory answer, which she describes as "unresponsive." In the answer, Byrd stated that before the September 1, 1999 meeting, he called three planning board members to ask if they were attending the meeting. He also stated that he had had numerous conversations over the years with the planning board members, but could not recall the specifics of those conversations.

The trial court was entitled to ignore the interrogatory response. *See Keshishian v. CMC Radiologists*, 142 N.H. 168, 174 (1997); *see also* SUPER. CT. R. 59-A. Even if the trial court did not ignore it, nothing in this response evinces Byrd's "bias" regarding Sanderson's request to cut trees on Libbee Road. The trial court's

denial of Sanderson's motion for reconsideration on this ground thus was not an abuse of discretion. *See Brown v. John Hancock Mut. Life Ins. Co.*, 131 N.H. 485, 492 (1989).

In the motion for reconsideration, Sanderson also informed the court that she planned to depose Byrd to obtain more information about his communications with other planning board members. As the party alleging bias must develop his or her claim "independently of any interrogation of the board," *Petition of Grimm*, 138 N.H. at 52-53, the court was also entitled to deny Sanderson's implicit request for additional discovery on this issue.

Sanderson next asserts that the court erred in denying her motion for reconsideration on the ground that the scenic road statute does not apply to her. The record shows that Sanderson did not raise this issue in her original petition, although it was an issue that was readily apparent at the time. To the contrary, throughout her petition, Sanderson asserts that the scenic road statute applied to her request. Accordingly, the trial court's refusal to rule on it for the first time on the motion for reconsideration was not an abuse of discretion. *See Mt. Valley Mall Assocs.*, 144 N.H. at 654-55.

*Affirmed.*

BROCK, C.J., and BRODERICK and DUGGAN, JJ., concurred.