NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
Case No. 2022-0122
Citation: Mojalaki Holdings v. City of Franklin, 2024 N.H. 17


MOJALAKI HOLDINGS, LLC & a.

v.

CITY OF FRANKLIN

Argued: January 31, 2023
Opinion Issued: April 9, 2024


Cleveland, Waters and Bass, P.A., of Concord (Philip M. Hastings and Jeffrey C. Christensen on the brief, and Jeffrey C. Christensen orally), for the plaintiffs.


Wescott Law, P.A., of Laconia (Paul F. Fitzgerald on the brief and orally), for the defendant.


HANTZ MARCONI, J.

[¶1] The plaintiffs, Mojalaki Holdings, LLC (Mojalaki) and GSSG New Hampshire, LLC (GSSG), appeal an order of the Superior Court (Tucker, J.) affirming a decision of the City of Franklin Planning Board (Board) that denied

a site plan application to install a solar panel array. We reverse and remand for entry of a builder's remedy.

I

[¶2] We draw the following facts from the trial court's order, the Board's decision, or the record before us. GSSG applied for site plan approval to construct a solar panel array. The solar panel array requires installing new utility poles and cutting down mature trees so the solar panels can receive sufficient sunlight. It would sit on about six and a half acres of the approximately 96 acres of land owned by Mojalaki. The land is mostly open space and was once a golf course.

[¶3] At the time of the application, the City Planner advised that the City did not have any ordinance language "on the books" specifically addressing solar panel arrays. Instead, he advised that the Board has relied on RSA 672:1, III-a when reviewing them. RSA 672:1, III-a (2016) states:

> Proper regulations encourage energy efficient patterns of development, the use of solar energy, including adequate access to direct sunlight for solar energy uses, and the use of other renewable forms of energy, and energy conservation. Therefore, the installation of solar, wind, or other renewable energy systems or the building of structures that facilitate the collection of renewable energy shall not be unreasonably limited by use of municipal zoning powers or by the unreasonable interpretation of such powers except where necessary to protect the public health, safety, and welfare . . . .

[¶4] While reviewing the application, the Board held multiple hearings and conducted a site visit. During public comment sessions, neighbors raised concerns that the project could alter the scenery of the area and their views of the land. The Board heard concerns about the "impact of the solar array on the community," including how the project would affect neighboring property values. Some members of the public distrusted the project because of bad experiences with other solar projects in the city. The plaintiffs tried to address those concerns by representing to the Board that they would plant new trees and install a green mesh to screen off the project. Neighbors remained opposed.

[¶5] After the public hearings closed, the City Planner drafted two decisions — one to grant the application with 14 conditions and one to deny it. He sent both to the Board for its review and vote. The Board denied the site plan application by a vote of seven to one. The Board concluded that the project conflicted with several of the purpose provisions in the City's site plan review regulations and gave three reasons for its denial. First, it opined that installing new utility poles would "create an industrial look and character

2

which is out of place in this neighborhood." Second, it opined that the solar panel array "creates an endangerment, an adverse impact, to both the direct abutters to the project, and to the overall residents of the neighborhood." And third, it opined that cutting down mature trees to plant new trees contradicts the purpose provisions.

[¶6] The plaintiffs appealed the decision to the superior court. The superior court upheld the denial of the site plan application, relying on the first and third of the Board's three reasons for denial. It determined, however, that no facts supported the Board's second basis, that the solar panel array endangered, or adversely impacted the residents, and did not uphold that finding.

[¶7] This appeal followed.

II

[¶8] When a party appeals a planning board's decision and then a trial court's decision, two standards of review come into play. First, the trial court's review of a planning board's decision is governed by RSA 677:15, V, which provides that the trial court "may reverse or affirm, wholly or partly, or may modify the decision brought up for review when there is an error of law or when the court is persuaded by the balance of probabilities, on the evidence before it, that [the Board's] decision is unreasonable." RSA 677:15, V (2016). Thus, the trial court's review is limited. Trustees of Dartmouth Coll. v. Town of Hanover, 171 N.H. 497, 504 (2018). The trial court must treat the factual findings of the planning board as prima facie lawful and reasonable and cannot set aside its decision absent unreasonableness or an identified error of law. Id. The appealing party bears the burden of persuading the trial court that, by the balance of probabilities, the Board's decision was unreasonable. Id. The trial court determines not whether it agrees with the planning board's findings, but whether there is evidence upon which its findings could have reasonably been based. Id.

[¶9] Our review of the trial court's decision is similarly limited. Id. We will reverse a trial court's decision on appeal only if it is not supported by the evidence or is legally erroneous. Id. We review the trial court's decision to determine whether a reasonable person could have reached the same decision as the trial court based upon the evidence before it. Id. We will uphold the trial court unless its decision is not supported by the evidence or is legally erroneous. Star Vector Corp. v. Town of Windham, 146 N.H. 490, 493 (2001).

[¶10] The plaintiffs first assert that the trial court erred by affirming the Board's decision to deny the application in reliance solely on the purpose provisions of the site plan regulations even though the plaintiffs satisfied all of the site-specific technical regulations applicable to the project. The defendant

3

counters that the trial court properly upheld the Board's denial based on the purpose provisions of the site plan regulations because the Board had specific concerns about constructing a solar panel array in a rural residential area. We agree with the plaintiffs. The trial court erred in affirming the Board's decision to deny the plaintiffs' site plan application based solely on applying the purpose provisions of the site plan regulations.

[¶11] Site plan review is designed to ensure that uses permitted by a zoning ordinance are "constructed on a site in such a way that they fit into the area in which they are being constructed without causing drainage, traffic, or lighting problems." Summa Humma Enters. v. Town of Tilton, 151 N.H. 75, 78 (2004) (quotation omitted). Site plan review is also intended to ensure "that sites will be developed in a safe and attractive manner and in a way that will not involve danger or injury to the health, safety, or prosperity of abutting property owners or the general public." Id. (quotation omitted). Nevertheless, site plan review is limited, and a project cannot be denied simply because the Board "does not feel that the proposed use is an appropriate use of the land." Trustees of Dartmouth Coll., 171 N.H. at 504-05 (quotation omitted). That question is reserved for zoning. Id. at 505. "If the use is permitted by the zoning ordinance, it cannot be barred by the site review process unless the use would create unusual public safety, health, or welfare concerns." 15 Peter Loughlin, New Hampshire Practice: Land Use Planning and Zoning § 30.09, at 556 (2010).

[¶12] RSA 674:44 (2016) governs the adoption of local site plan review regulations. When a planning board adopts site plan regulations, they "must, among other things, '[d]efine the purposes of site plan review' and '[s]pecify the general standards and requirements with which the proposed development shall comply.'" Derry Senior Dev. v. Town of Derry, 157 N.H. 441, 448 (2008) (quoting RSA 674:44, III(b), (c)). Provisions that "[d]efine the purposes of site plan review" differ from those that "[s]pecify the general standards and requirements with which the proposed development shall comply." Id. Purpose provisions outline the goals of site plan review regulations. Conversely, other provisions detail the specific technical requirements that applications must meet to achieve the goals of the purpose provisions. See, e.g., id.

[¶13] Here, the Board adopted site plan regulations pursuant to RSA 674:44. The title of Chapter 402-1 of the regulations is "General Provisions," and it includes a "Purpose" provision. See Franklin, N.H., Site Plan Review Regulations ch. 402-1(C) (2011) (SPRR). The "Purpose" provision states that "[t]hese regulations shall provide for and require all of the purposes and provisions outlined in [RSA 674:44, II] . . . and such other purposes outlined below." Id. Relevant here, the stated purposes of the regulations are to, among other things:

4

2. Provide for the harmonious and aesthetically pleasing development of the City and its environs.

3. Provide that the land shown on the proposed plan is of such character that it can be used for building purposes without endangerment to the health, safety, and welfare of the general public and the abutting properties and their owners.

. . .

8. Provide for the protection of significant existing features such as mature trees or stands of trees, stone walls, water bodies, wetlands, and natural drainage patterns, and historic landmarks.

Id.

[¶14] The plaintiffs contend that the Board could not rely on these purpose provisions, alone, to deny their application. We agree. By their plain language, the purpose provisions outline the purposes for the specific regulations that follow. See Derry Senior Dev., 157 N.H. at 448 (determining that the board enacted site plan regulations to achieve their stated purpose). The purpose provisions do not detail specific requirements that an applicant must meet. Without specific requirements, the applicant is left without objective standards to guide the application and the proposed project is left to be judged by the subjective views of the Board through ad hoc decision making. See id. at 451[1] ("[T]he board may not deny approval on an ad hoc basis because of vague concerns."); see also Summa Humma Enters., 151 N.H. at 81 (Nadeau, J., dissenting) (reasoning that the plaintiff should not be faulted for not meeting the Board's concerns when no governing ordinance or regulation existed).

[¶15] Although the trial court did not read Trustees of Dartmouth College "to prohibit a Board from using general purpose provisions in ruling on a site plan," when an application complies with zoning and the specific technical requirements of the site plan regulations, ad hoc decision making without sufficient evidentiary support cannot justify a denial on the basis of a purpose provision. Trustees of Dartmouth Coll., 171 N.H. at 512-13. Thus, while the

---

[1] In Derry Senior Development, we determined that there was insufficient evidence to rebut the presumption that obtaining state approval of the sewage disposal system as required by the site plan regulations provided adequate proof of a safe system. Derry Senior Dev. v. Town of Derry, 157 N.H. 441, 448-51 (2008). In doing so, we explained that if other evidence demonstrated that, despite state approval, the proposed system posed a danger to public health, safety, or welfare by failing to satisfy a purpose for which the site plan regulations are enacted, the board could deny the application. Id. at 451. We did not conclude that reliance on the purpose provisions, alone, was a proper basis for denial of the application. Id.

purpose provisions guide the application of the site plan requirements, they lack sufficient specificity for site plan review.  In Trustees of Dartmouth College and here, both Boards denied the applications by relying on their ad hoc concerns.  See Trustees of Dartmouth Coll., 171 N.H. at 512-13.  We determined there, as we do here, that a Board "cannot supersede the specific regulations and ordinances that control the site plan review process with their own personal feelings and then justify their reasoning through the application of general considerations," or here, purpose provisions.  Id. at 514.

[¶16] The defendant analogizes the present case to Deering v. Tibbetts, to contend that the Board can deny a project solely because it does not fit the surrounding environment.  In Deering, we considered the validity of a municipal ordinance prohibiting construction near the town common unless the selectmen approved the plans "in order that the atmosphere of the Town of Deering may be maintained."  Deering v. Tibbetts, 105 N.H. 481, 482 (1964) (quotation omitted).  The selectmen denied an application to construct a pre-built home because it would "impair the atmosphere of the Town."  Id. at 482-83 (quotation omitted).  We concluded that the ordinance was a valid exercise of the town's police powers to make bylaws for the "protection of the public institutions of the town."  Id. at 485; see RSA 31:39 (2023 Supp.).  Deering differs from this case, however, because it predates the modern statutory framework for zoning and site plan review.  See Laws 1983, 447:1; RSA chs. 672, 673, 674 (2016 & Supp. 2023).  At that time, the Town of Deering had not adopted a zoning ordinance or site plan review regulations, nor had it established a planning board, which, today, are prerequisites to the exercise of site plan review.  Deering, 105 N.H. at 483; see RSA 674:44, I.  Because Deering dealt with an interpretation of the scope of the municipality's statutory police powers, it offers little guidance.

[¶17] In addition to their challenge of the application's denial, the plaintiffs contend that the denial of the solar facility constituted an unconstitutional taking because the decision suggested "that any development of the [p]roperty would have been unacceptable."  In light of our decision on the application, we need not address their constitutional argument.

[¶18] Lastly, the plaintiffs contend that they are entitled to a builder's remedy, which would grant them the right to construct their solar panel array.  See Cmty. Res. for Justice v. City of Manchester, 157 N.H. 152, 155 (2008).  We agree.  A builder's remedy grants a developer the specific right to complete a proposed project.  Id.  "[T]o forsake [the plaintiffs'] reasonable development plans after all the time, effort and capital invested in such a challenge is grossly inequitable."  Britton v. Town of Chester, 134 N.H. 434, 443 (1991).  It is a discretionary remedy.  Soares v. Town of Atkinson, 129 N.H. 313, 316 (1987).  To receive a builder's remedy, the applicants bear the burden of proving that their proposed development is reasonable by a preponderance of the evidence.  Britton, 134 N.H. at 443-44.  If the applicants meet their burden,

6

they can proceed with their development, so long as they comply with all other applicable regulations.  Id.

[¶19] Our builder's remedy cases often arise when a zoning ordinance provision is invalidated.  See, e.g., id.  However, we granted a builder's remedy when the record established that a site plan proposal complied with the specific zoning ordinances and site plan regulations.  Trustees of Dartmouth Coll., 171 N.H. at 514 (granting a builder's remedy provided that the applicant comply with the 21 conditions identified by the planning board).  There, we determined that no further fact finding was necessary.  Id.  Similarly, here, our review of the record reveals that, other than with respect to the purpose provisions relied on by the Board, there was no dispute that the application met the specific, applicable site plan regulations.  Thus, we grant the plaintiffs' request for a builder's remedy provided that they comply with the 14 conditions listed in the alternative draft decision which would have granted the application.

Reversed and remanded.

MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred; HICKS, J., sat for oral argument but did not participate in the final vote, see N.H. CONST. pt. II, art. 78.

7