ROBERT B. COLLINS & another[1] *vs*. HISTORIC DISTRICT
COMMISSION OF CARVER & another.[2]

No. 07-P-1054.

Plymouth. May 19, 2008. - December 19, 2008.

Present: CYPHER, BROWN, & FECTEAU, JJ.

*Historic District Commission,* Decision. *Constitutional Law,* Taking of property.
   *Due Process of Law,* Taking of property. *Municipal Corporations,* By-laws
   and ordinances.

A Superior Court judge erred in determining that the defendant town and its
   historic district commission (commission), by virtue of the commission's
   refusal to issue a certificate of appropriateness to the plaintiffs for the
   construction of a single-family home on their lot, in combination with
   certain acts by town police officers, effected a taking of the plaintiffs'
   property without just compensation under the Fifth Amendment to the
   United States Constitution, where the plaintiffs failed to make a legally
   adequate showing that the town authorized a permanent physical occupa-
   tion of the land in question, and where the commission's decision did not
   deny the plaintiffs all economically viable use of the property. [392-394]

CIVIL ACTION commenced in the Superior Court Department on
December 3, 1991.

The case was heard by *David A. McLaughlin,* J.

*Thomas P. Lane, Jr.,* for the defendants.

*Richard L. Wainwright* for the plaintiff.

BROWN, J. After a bench trial in the Superior Court, a judge
found in favor of the plaintiffs, Robert B. Collins and Pamela
Taylor Collins, on their claim that actions of the town of Carver
(town) and its historic district commission, including certain
acts by town police officers, considered in combination,
constituted a taking of the plaintiffs' property without just
compensation. The judge awarded $37,567.60 to the plaintiffs
as compensation for the taking. The town now appeals.

[1]Pamela Taylor Collins.
[2]Town of Carver.

*Background.* In 1979, as is memorialized by a recorded deed, Robert Collins and his then wife Luanne Collins purchased an eight and one-half acre parcel of vacant land (locus) located within the town. The purchase price was $2,000. The deed recited that the locus was "subject to the roadway known as Savery Avenue with the rights connected thereto" and "subject to taking for the relocation of Route 58." In May, 1989, Robert Collins conveyed the locus to himself and Pamela Taylor Collins, husband and wife, as tenants by the entirety.

a. *Savery historic district.* In 1983, by authority of G. L. c. 40C, the Historic Districts Act,[3] the town created the Savery historic district. Tracking the language of G. L. c. 40C, § 2, the town's historic district by-law was designed "to promote the educational, cultural, economic and general welfare of the public through the preservation and protection of the distinctive characteristics of buildings and places significant in the history of the Town of Carver or their architecture, and through the maintenance and improvement of settings for such buildings and places and the encouragement of design compatible therewith." The historic district commission (commission) has the authority (G. L. c. 40C, § 6) to pass upon the appropriateness of "exterior architectural features" open to view by the public from certain public places. G. L. c. 40C, § 6, as appearing in St. 1971, c. 359, § 1. See *Opinion of the Justices,* 333 Mass. 773, 780-781 (1955); *Dennis Hous. Corp.* v. *Zoning Bd. of Appeals of Dennis,* 439 Mass. 71, 74-75 (2003); *Sleeper* v. *Old King's Hy. Regional Historic Dist. Commn.,* 11 Mass. App. Ct. 571, 573 (1981).

The locus is situated entirely within the boundaries of the Savery Avenue historic district.[4] As such, by the terms of the by-law and G. L. c. 40C, § 6, any building proposed to be built on the locus must be authorized (if at all) by the commission by the issuance of a certificate of appropriateness.

In August, 1991, Robert and Pamela Collins applied to the

---

[3]The Historic Districts Act (G. L. c. 40C) authorizes cities and towns in the Commonwealth to create historic districts within their communities, without the need for special legislation. See G. L. c. 40C, § 3; Wieand, Historic District Commissions in Massachusetts, 85 Mass. L. Rev. 113, 113 (2001).

[4]Savery Avenue was constructed in the 1860's as a divided roadway. It has been preserved in its original state, lined on either side and along the median strip by an uninterrupted stand of trees.

commission for permission to build a single-family home on lot 1. The commission denied their application. Robert Collins then commenced an action in Superior Court, pursuant to G. L. c. 40C, § 12A, contesting the commission's decision. After the filing of a motion for summary judgment, a Superior Court judge remanded the case to the commission for clarification of its decision. On remand, the commission held a series of public hearings, which led to an amended decision denying the Collinses' application. Among its other detailed reasons for so deciding, the commission found the proposed home site on lot 1 would be "highly visible" from both Savery Avenue and other public areas in the historic district.[5] It is indisputable that the commission's amended decision was limited to a proposal submitted by the Collinses to build a single structure proposed to be situated on lot 1 of the locus.[6]

The parties then returned to the Superior Court, where a second judge denied the plaintiffs' motion for partial summary judgment. Accepting the commission's amended decision as legally tenable,[7] under G. L. c. 40C, the motion judge determined there was a disputed issue of fact, namely, whether the proposed structure would "visually contaminate" the Savery Avenue district.

b. *Eminent domain proceedings.* While the action under G. L. c. 40C, § 12A, appealing from the commission's decision was

---

[5]In denying the application, the commission explained that "the proposal as set forth by Collins makes little or no effort to recognize either the cultural or historical significance of Savery Avenue or the Savery Historic District as a whole as there is little attempt to preserve the integrity of the woodland character of Savery Avenue as it has existed for 130 years." The commission stated further: "[T]here has been no satisfactory explanation or presentation of any basis to cause the [commission] to conclude that the home could not be set back from Savery Avenue at a greater distance or on another part of the Collins land so as to minimize the visibility from both Savery Avenue and the Savery Historic District." In addition, the commission pointed out the applicants had failed to identify with any specificity "their intentions with respect to landscaping and tree preservation so as to assist" the commission in its decision-making process.

[6]Previously, in 1987, the town's planning board had endorsed an "ANR" (approval not required, see G. L. c. 41, § 81P) plan submitted by Robert Collins, showing a division of the locus into four separate lots. The record indicates Collins never recorded the ANR plan. Collins later obtained approval for installation of a septic system on lot 1.

[7]The motion judge distinguished the situation presented in *Gumley* v. *Selectmen of Nantucket*, 371 Mass. 718 (1977).

still pending, the town's board of selectmen on August 30, 1994, voted to adopt an order of intention to take the locus by eminent domain pursuant to G. L. c. 80A. That order was recorded with the Plymouth County registry of deeds. Thereafter, the town commenced suit in the Superior Court seeking an order declaring the parties' rights and obligations vis-à-vis the taking of the locus. A judge appointed three commissioners who were to be responsible for determining the value of the locus, in accord with the procedure mandated by c. 80A. The commissioners determined that the highest and best use of the locus was as four single-family house lots; the fair market value (as of the relevant time period — August, 1994) of the locus was determined to be $193,600. Subsequently, a Superior Court judge amended the report of the commissioners and awarded $205,000 to Robert and Pamela Collins for the eminent domain taking.[8] Robert and Pamela Collins did not appeal from the resulting final judgment, entered on November 15, 1995.

c. *Present dispute.* Subsequently, on May 31, 2002, in their pending appeal in Superior Court under G. L. c. 40C, § 12A, Robert and Pamela Collins filed a first amended complaint alleging that the town (by its agents, employees, boards, commissions, and town meeting votes) had deprived them of all beneficial and economic value of their land between September, 1987, and November, 1995 (the latter being the date of the eminent domain taking).

The parties tried the liability phase of the case first.[9] The parties stipulated to many of the material facts, and Robert Collins, appearing as the sole trial witness, testified as to the events in question. The trial judge ruled that the commission's refusal to issue a certificate of appropriateness, "considered in concert with actions of the town police officers"[10] and comments voiced by the then chairman of the town's board of selectmen at a

---

[8]The judge made the amendment at the urging of the parties, who had filed a joint motion to that effect.

[9]Prior to trial, the judge and parties took a view of the locus and the historic district.

[10]Robert Collins did not testify as to the particular acts of the Carver police called into question by him. A letter dated July 6, 1988, from his then counsel, Kevin J. O'Malley, Esq., to town counsel sets forth some particulars: according to the letter, on two occasions, the police had stopped a contractor, who had been hired to dig a well, from entering onto the land. The trial judge in his decision on damages, however, pointed out that the town had not physically

public hearing held by the commission,[11] "constructively amount[ed] to a permanent physical intrusion on the [Collinses'] land" and therefore constituted a taking.

On appeal, the defendants argue that the trial judge erred in deciding that there had been a taking of the plaintiffs' land. We agree and reverse the judgment entered in favor of the plaintiffs.

*Discussion.* The plaintiffs make their claim for a taking under the takings clause of the Fifth Amendment to the United States Constitution, which commands: "[N]or shall private property be taken for public use, without just compensation." An unlawful taking is often found when (a) government action has authorized a permanent physical occupation of private property, see *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982); or (b) governmental regulatory action has gone "too far" so as to deprive an owner of "all economically beneficial or productive use" of the property, see *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1014-1015, 1019 (1992). See also *Yankee Atomic Elec. Co. v. Secretary of the Commonwealth*, 403 Mass. 203, 209 (1988); *Steinbergh v. Cambridge*, 413 Mass. 736, 741 (1992), cert. denied, 508 U.S. 909 (1993); *Daddario v. Cape Cod Commn.*, 425 Mass. 411, 415-417, cert. denied, 522 U.S. 1036 (1997).

In our view, the present dispute does not implicate either of these scenarios. The plaintiffs have not alleged that there was a "physical invasion" by the town. It was error for the judge to rule that the town's actions "constructively amounted" to a permanent physical intrusion upon the locus. There was no legally adequate showing that the town authorized a permanent

appropriated the land by the acts of the police because the plaintiffs were subsequently able to have a third party drill a well on the land.

It is noteworthy that in their 1991 complaint Robert Collins and Pamela Collins did not allege or otherwise suggest that the Carver police had acted in such a way as to deprive them of the use of their land. Nor did they explicitly do so in their first amended complaint.

[11]Robert Collins testified that the chairman of the board of selectmen made comments at several meetings of the commission, including one in October, 1991, at which he stated that no matter what Collins did, he (the then board of selectmen chairman) was "not going to let [Collins] use that land." At trial plaintiffs' counsel acknowledged that the chairman of the board of selectmen was not a member of the commission.

physical occupation of the kind envisioned in *Loretto, supra.*[12] "The government effects a physical taking only where it *requires* the landowner to submit to a physical occupation of his land" (emphasis original). *Yee* v. *Escondido,* 503 U.S. 519, 527 (1992). The "element of required acquiescence is at the heart of the concept of occupation." *Ibid.,* quoting from *FCC* v. *Florida Power Corp.,* 480 U.S. 245, 252 (1987). The town did not act in such a way as to require the owners to submit to a physical occupation of their land. The commission acted within its authority in refusing to issue a certificate of appropriateness.[13] The commission reached its decision in accordance with the factors to be considered under the town by-law, as is evident by its express finding that "the proposed home site would severely diminish the quality of the natural setting which is the hallmark of Savery Avenue and the Savery Historic District" and "negatively impact the appearance, preservation and protection of the distinctive characteristics of this place of significance in the history of the Commonwealth of Massachusetts and the Town of Carver."

There was also no showing whatsoever that specific acts of the Carver police led to a *permanent* physical occupation of the plaintiffs' land. If anything, the dispute is answered by the plaintiffs' own evidence confirming that, though there was some degree of a *temporary* restriction, they were able to have a contractor gain access to the locus and drill a well on lot 1. Nor was any evidence tending to show that comments voiced by the

---

[12]The United States Supreme Court in *Loretto,* 458 U.S. at 441, stated that its holding was "very narrow" and that it otherwise did not call into "question the equally substantial authority upholding a State's broad power to impose appropriate restrictions upon an owner's *use* of his property" (emphasis original). In *Loretto,* the Court addressed a landlord's claim arising from the application of a State law requiring landlords to allow cable companies to install cable facilities in apartment buildings. The Court ruled that the fixed installation of cable-related materials was a permanent occupation of the building. *Id.* at 435-437. "A permanent physical invasion, however minimal the economic cost it entails, eviscerates the owner's right to exclude others from entering and using her property — perhaps the most fundamental of all property interests." *Lingle* v. *Chevron U.S.A. Inc.,* 544 U.S. 528, 539 (2005).

[13]It should be noted that a court may not annul or otherwise overturn a decision of a historic district commission unless the latter has exceeded its authority or the decision was arbitrary, capricious, or erroneous or unsupported by the evidence. See G. L. c. 40C, § 12A; *Harris* v. *Old King's Hy. Regional Historic Dist. Commn.,* 421 Mass. 612, 615-616 (1996).

chairman of the board of selectmen, at a public hearing of the commission, constituted an official act of the board or the town. Even if strident in form, the verbal comments were nothing more than a citizen's opinion offered in the context of a public debate on the issues before the commission respecting the preservation of the Savery historic district. Such comments are immaterial to the taking analysis, and any suggestion to the contrary would do violence to our law governing claims of takings.

The trial judge did not decide that there was a regulatory taking of the plaintiffs' land. Nor was there any valid ground to do so on this record. No matter how the commission's decision is characterized, its application of the town by-law to the locus, which did not deny the plaintiffs all economically viable use of the property, was not a taking under any accepted understanding of the Fifth Amendment.[14] See *Penn Central Transp. Co.* v. *New York City*, 438 U.S. 104, 123-125 (1978); *Lingle* v. *Chevron U.S.A. Inc.*, 544 U.S. 528, 538-540 (2005). See also *Opinion of the Justices*, 333 Mass. at 777-778; *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. 7, 19-20 (1979); *Sleeper* v. *Old King's Hy. Regional Historic Dist. Commn.*, 11 Mass. App. Ct. at 576.

The judgment is reversed, and a new judgment is to be entered for the defendants.

*So ordered.*

---

[14]We point out the plaintiffs' taking claim might have been dismissed for their failure to exhaust administrative remedies available to them. See *Williamson County Regional Planning Commn.* v. *Hamilton Bank*, 473 U.S. 172, 190-191 (1985); *FIC Homes of Blackstone, Inc.* v. *Conservation Commn. of Blackstone*, 41 Mass. App. Ct. 681, 690 n.13 (1996); *Commonwealth* v. *Blair*, 60 Mass. App. Ct. 741, 746-747 (2004). It has not been shown that the plaintiffs sought a G. L. c. 40C, § 10(c), certificate of hardship from the application of the requirements of the town's by-law to the locus, see *Sleeper* v. *Old King's Hy. Regional Historic Dist. Commn.*, 11 Mass. App. Ct. at 574, or that they applied for a certificate from the historic district commission to build on any other lot that comprised the locus. The town raised this exhaustion defense in its answer.